Merrimack
No. 90-324

THE STATE OF NEW HAMPSHIRE

v.

CARL LAURIE

April 16, 1992

*John P. Arnold,* attorney general (*Diane M. Nicolosi,* assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J.    The defendant, Carl Laurie, was convicted of first degree murder. On appeal, he argues that the Trial Court (*Manias,* J.) improperly admitted his confession to the police into evidence. We affirm.

The trial court order established the following facts. On April 21, 1989, the body of Lucien Fogg was found in the woods near his Franklin home. Mr. Fogg had been beaten and stabbed to death several days earlier. On April 22, 1989, the defendant was interviewed by two Franklin police officers regarding the murder. He denied any involvement.

On April 26, 1989, a Franklin police officer and a State police officer interviewed the defendant for a second time at the Franklin police station. The officers informed the defendant of his *Miranda* rights. The defendant indicated that he understood his rights, signed a waiver form, and agreed to talk. The interview began at 5:34 p.m. The defendant maintained his innocence throughout the interview and asked to be taken home at approximately 12:08 a.m. At that time, all further questioning ceased. The defendant, however, was arrested on an unrelated outstanding bench warrant and transferred to the county jail at approximately 1:00 a.m.

On the following morning of April 27, 1989, the defendant, after sleeping for approximately three hours, was arraigned at the Franklin District Court for the outstanding charges and taken to the booking room. At the booking room, the Franklin Police Chief, Douglas Boyd, approached the defendant and asked him how he was feeling. The defendant responded that he had eaten a good breakfast and felt well. Chief Boyd then asked the defendant if he would answer further questions regarding the Fogg murder. Although Chief Boyd informed the defendant that he could decline to be interviewed further, the defendant agreed to be questioned in the chief's office. This third interview got underway at approximately 1:06 p.m. Once again, the defendant signed a written waiver of his *Miranda* rights. Approximately 1½ hours later, he confessed to murdering Lucien Fogg. This confession was used against the defendant at trial.

The defendant raises two issues on appeal. First, he claims that his confession of April 27 was inadmissible at trial because it was at-

tained after he expressed his desire to remain silent at the two prior interviews. Second, the defendant claims that his confession was involuntary and thereby violated his due process rights. For the reasons that follow, we affirm the trial court's findings to the contrary.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that if an accused in police custody "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473–74. The Court reasoned that "[w]ithout the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Id.* at 474.

In a later case, *Michigan v. Mosley*, 423 U.S. 96 (1975), the Supreme Court recognized that although *Miranda* clearly indicated that "the interrogation must cease" when a defendant invokes his right to remain silent, it did not address the circumstances under which interrogation may be *resumed.* The *Mosley* Court rejected the view that a defendant's expression of his desire to remain silent created a *per se* prohibition on all future questioning. It explained:

"[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .' The critical safeguard identified in the passage at issue is a person's 'right to cut off questioning.' Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement au-

thorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'"

*Id.* at 102–04 (citations omitted).

We held in *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977), that a confession is a special type of evidence, the voluntariness of which must be determined beyond a reasonable doubt under the State Constitution. It follows that since both federal and State constitutional protections were raised, our analysis of the validity of confessions, including any *Miranda* prerequisites, is a matter of State constitutional law in the first instance.

█ As a preliminary matter, we must determine whether *Mosley's* "scrupulously honored" standard adequately protects a defendant's privilege against self-incrimination under part I, article 15 of the New Hampshire Constitution. *State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983); *see also Mosley*, 423 U.S. at 120 (Brennan, J., dissenting) (Justice Brennan invites state courts to "impose higher standards" under state law). We agree with the *Mosley* Court's analysis of *Miranda*, quoted above, and conclude that whenever a suspect in custody exercises his option to cut off questioning, the police must scrupulously honor the suspect's desire to remain silent.

We now turn to the question of whether the officers who conducted the April 27 interview scrupulously honored the defendant's right to cut off questioning. In *Mosley*, the Court determined that the defendant's rights were scrupulously honored because the following four factors existed: (1) the police "immediately ceased the interrogation"; (2) the police did not resume questioning until "the passage of a significant period of time"; (3) the police provided a "fresh set of [*Miranda*] warnings"; and (4) the police "restricted the second interrogation to a crime that had not been the subject of the earlier interrogation." *Mosley, supra* at 106. Unfortunately, the Court "did not indicate which, if any, of the factors present in *Mosley* are essential to satisfy the [scrupulously honored] standard." Geoffrey R. Stone, *The Miranda Doctrine in the Burger Court*, 1977 SUP. CT. REV. 99, 134.

█ The defendant correctly notes that because the April 27 interview involved the *same crime* as the first and second interviews,

the fourth *Mosley* factor was not met. Thus, he argues, the April 27 confession automatically violated *Mosley*. We disagree. "Far from laying down inflexible constraints on police questioning and individual choice, *Mosley* envisioned an inquiry into all of the relevant facts to determine whether the suspect's rights have been respected." *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988). Accordingly, numerous federal courts have expressly found that confessions made in response to reinterrogation involving the same crime as a prior interrogation are not *per se* unconstitutional. *See, e.g., Kelly v. Lynaugh*, 862 F.2d 1126, 1131 (5th Cir. 1988), *cert. denied*, 492 U.S. 925 (1989); *Hsu, supra* at 410–11; *United States v. Udey*, 748 F.2d 1231, 1242 (8th Cir. 1984), *cert. denied*, 472 U.S. 1017 (1985). We find that although the fourth *Mosley* factor should be given considerable weight in the "scrupulously honored" analysis, see *State v. Hartwig*, 123 Wis. 2d 278, 287, 366 N.W.2d 866, 871 (1985), its absence does not automatically prohibit a finding that the police scrupulously honored a defendant's desire to remain silent. However, we do not preclude the possibility that the first, second, or third factors (all of which were met in this case) may be deemed indispensable to the *Mosley* analysis in the future. The New Jersey Supreme Court, for example, has written persuasively that a fresh set of *Miranda* warnings is indispensable to a finding that a defendant's right to cut off questioning was scrupulously honored. *See State v. Hartley*, 103 N.J. 252, 267, 511 A.2d 80, 87–88 (1986).

We now turn to the defendant's argument that even if subsequent interrogation regarding the same crime may sometimes be permitted under *Mosley*, the trial court nonetheless erred in finding that the police scrupulously honored the defendant's request to remain silent. The trial court's determinations with regard to this matter will be upheld "unless, when viewed in the light most favorable to the State, the decision is contrary to the manifest weight of the evidence." *State v. Gravel*, 135 N.H. 172, 176, 601 A.2d 678, 680 (1991).

In a comprehensive order, the trial court ruled that the police scrupulously honored the defendant's request to remain silent:

"[O]nce the defendant invoked his right to remain silent, interrogation immediately ceased. Thereafter the police did not question or even approach the defendant about the homicide for nearly twelve hours. In the meantime the defendant slept and ate a meal. When Chief Boyd did speak with the defendant again he clearly indicated he wished to ques-

tion the defendant about the homicide. He also told the defendant he did not have to answer questions if he did not want to. When the second interview began [the officers] obtained a written waiver from the defendant of his *Miranda* rights. It is clear the defendant was read his rights, that he understood his rights and that he waived these rights. Chief Boyd again emphasized that they wished to discuss the Lucien Fogg homicide.

Based on these facts the Court finds that the defendant was willing to speak with [the officers] about the homicide on the afternoon of April 27, despite having invoked his right to remain silent the night before. This is not a case where the police failed 'to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind.' *Mosley*, 96 S. Ct. at 327. Accordingly, in view of the totality of the circumstances, the Court finds the police scrupulously honored the defendant's right to remain silent."

Having reviewed the record, we decline to hold that the above analysis runs "contrary to the manifest weight of the evidence." *Gravel supra.* Thus, we uphold the trial court's finding that the police scrupulously honored the defendant's right to remain silent.

Next, the defendant claims that his confession of April 27 was involuntary and thereby violated part I, article 15 of the New Hampshire Constitution and the fourteenth amendment to the Federal Constitution. The defendant emphasizes that the officers conducting the April 26 interview applied manipulative interrogation techniques such as insinuating that the defendant would not be charged with first degree murder if he showed remorse and confessed. The coercion created by these techniques, the defendant argues, carried over into the April 27 interview, tainting it with an unacceptable level of involuntariness.

■■■ The State had the burden at trial of proving beyond a reasonable doubt that the defendant voluntarily confessed. *State v. Chapman*, 135 N.H. 390, 398, 605 A.2d 1055, 1060 (1992). Because this burden of proof, grounded in part I, article 15 of the State Constitution, is more stringent than the preponderance of the evidence standard required under the Federal Constitution, *see Colorado v. Connelly*, 479 U.S. 157, 168 (1986), we need review the trial court's

decision only under the more demanding State constitutional standard. We will not overturn the trial court's decision unless it is "contrary to the manifest weight of evidence, as viewed in the light most favorable to the State." *Chapman, supra* at 399, 605 A.2d at 1061.

█ In determining the voluntariness of the defendant's confession, the trial court was required to examine the totality of the surrounding circumstances. *Chapman, supra,* at 399, 605 A.2d at 1061. The trial court's analysis follows:

"The confession the defendant seeks to suppress was made on April 27, 1989, some twelve hours after the custodial interrogation of April 26. The defendant claims that the police behavior during the April 26th interrogation is the primary reason the confession was involuntary. However, not only was the confession made twelve hours after that interview, but during the interval the defendant slept and ate a meal. Although he was in custody during this time, the police did not question him further about the Lucien Fogg homicide until 1:00 p.m. on April 27. Before the police reinstituted questioning on April 27 they made sure the defendant understood they wished to discuss the homicide and that he did not have to agree to further questioning. In response the defendant agreed to further questioning in Chief Boyd's office. Before questioning began the police obtained a written waiver from the defendant of his *Miranda* rights. It is clear the defendant was read his rights, that he understood his rights and that he waived these rights. During the taped confession the defendant acknowledged that he did not want an attorney, that he was not being pressured or forced into making a statement, that his statement was strictly voluntary, that he had been treated well by the police and that he felt rested enough to talk to the police.

When the defendant first admitted his involvement in the Lucien Fogg homicide he said he had been thinking about it for two weeks. He stated that he had had nightmares and had wanted to tell the police about his involvement in the Lucien Fogg homicide during the April 26th interview and at the April 22nd interview. After the taped confession the defendant said he felt better. He added that he had contemplated suicide. He told Sgt. Keough that he was glad everything was in the open and he wanted to thank everyone involved in the investigation for the way he had been

treated. The defendant added that he had almost confessed to Kathy Shannon when he told her he had a problem.

During the six hour interview on April 26 the defendant was repeatedly accused of killing Lucien Fogg and confronted with incriminating evidence. He listened to the police compare cold-blooded killers to remorseful killers. He listened to reasons why he should confess. He was clearly aware the police wanted him to confess but he never implicated himself in the homicide. As the defendant testified at the suppression hearing his guard was up.

In addition the defendant has had substantial contacts with the police and criminal justice system. He is 39 years old and has a G.E.D. degree. Clearly he understood the implications of being a suspect in a police investigation. Throughout the period of the investigation, up to and including the time of and following his confession, the defendant was capable of rational and intelligent thought. In fact, at one point the defendant admitted to [the officers] that he was evaluating what was in his best interests and weighing his options.

Moreover, the defendant was never threatened, nor were any express promises made. The defendant's decision to confess the next day was plainly his own; the confession was not precipitated by lengthy questioning or poor treatment. Based on the totality of the circumstances the Court finds that the State has established beyond a reasonable doubt that the defendant's confession on the afternoon of April 27 and all statements made thereafter were the product of an essentially free and unconstrained choice and were therefore voluntary."

On appeal, the defendant has failed to present any arguments which were not adequately considered by the trial court. Our review of the record has not uncovered any evidence suggesting that the trial court's analysis was "contrary to the manifest weight of evidence." *Chapman, supra* at 399, 605 A.2d at 1061.

*Affirmed.*

All concurred.