Hillsborough-northern judicial district
No. 93-443

THE STATE OF NEW HAMPSHIRE

v.

ALBERT BELAND

August 1, 1994

*Jeffrey R. Howard*, attorney general (*Patrick E. Donovan*, attorney, on the brief and orally), for the State.

*Albert E. Scherr*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.   The defendant, Albert Beland, was convicted on five misdemeanor counts of illegal gambling, contrary to RSA 647:2

(1986), and one felony count of conspiracy to falsify physical evidence, contrary to RSA 629:3 and 641:6 (1986). On appeal, the defendant argues that the trial court erred in refusing to suppress certain statements that he made to two police officers, contending that these statements were involuntary because they were made after the interrogating officers promised confidentiality and after one of the officers informed the defendant that his cooperation with the authorities would be taken into consideration. We affirm.

The charges against the defendant stemmed from the illegal use of electronic video poker machines for gambling purposes at Big Al's Amory Street Coffee House, Inc. ("Big Al's") in Manchester, of which the defendant was the proprietor. Beginning in August 1991, State and local law enforcement officials conducted an undercover investigation of illegal gambling in Manchester, which culminated in the issuance in March 1992 of search warrants for twenty-five different establishments. The issuance of the warrants and the date of the impending searches were kept strictly confidential. On the day of the planned search, as the police were secretly preparing the twenty-five search teams, two officers conducting surveillance on Big Al's observed a truck arrive and saw two men begin to load five video poker machines removed from Big Al's onto the truck. The officers conducting surveillance radioed their commanding officers that the video poker machines were being removed, blocked the truck's departure, and secured the scene.

Within minutes, Lieutenant James Stewart and two other officers arrived at Big Al's with search warrants for the premises and for the defendant. Stewart, who knew the defendant, explained to him that he was not under arrest and was free to leave, but that Stewart would prefer that he stay to observe the collection of monies as part of the search. The defendant voluntarily remained.

The defendant's appeal concerns statements that he made during two interviews with police officers. The first occurred toward the end of the search of Big Al's, when the defendant agreed to speak to Stewart in the back room. At the hearing on the motion to suppress, Stewart testified that he asked the defendant who had tipped him off to the raid that afternoon. The defendant refused to provide that information, although he did confirm that he had been given a tip. At trial, Stewart testified that he asked the defendant "[b]etween him and me . . . if he could give me who tipped him off" to the impending search of the premises that day.

The second interview occurred four days after the first, when the defendant and State Trooper Roland Lamy, with whom the defend-

ant was personally acquainted, went for a drive. At the hearing on the motion to suppress, Lamy testified that he asked the defendant to identify the tipster, and the defendant did so. Lamy told the defendant that if he cooperated with the police, his cooperation would be taken into consideration, although Lamy stated that he did not know specifically what form this consideration would take and that the defendant should discuss the matter with others. At trial, Lamy additionally testified that at the beginning of this non-custodial interview, he explained that his superiors had instructed him to contact the defendant in an effort to determine the tipster's identity. During the interview, the defendant expressed his fear of retaliation from the police officers involved should he disclose the tipster, and Lamy told the defendant that he would report the information to Deputy Police Chief Paul Brodeur, whom Lamy trusted, "[a]nd no one else."

The Superior Court (*Lynn*, J.) revisited the confidentiality issue at trial in light of the additional testimony described above, but ultimately decided not to exclude the defendant's statements to either officer.

■ The defendant argues that his statements were involuntary because he relied upon promises of confidentiality from each officer, and thus their admission at trial violated both the State and Federal Constitutions. Under part I, article 15 of our State Constitution, the State must prove the voluntariness of the defendant's statements beyond a reasonable doubt, a more stringent standard than the preponderance of the evidence standard required under the Federal Constitution. *State v. Laurie*, 135 N.H. 438, 444, 606 A.2d 1077, 1080, *cert. denied*, 113 S. Ct. 245 (1992). Accordingly we will review the trial court's determination under the more demanding State constitutional standard. *Id.* at 444–45, 606 A.2d at 1080.

"A determination of the voluntariness of a confession is a question of fact for the trial court to decide. Such a finding is entitled to stand unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *State v. Chapman*, 135 N.H. 390, 399, 605 A.2d 1055, 1061 (1992) (quotations, citations, and ellipses omitted). In determining the voluntariness of the confession, the trial court must examine the totality of the surrounding circumstances. *See State v. Carroll*, 138 N.H. 687, 691, 645 A.2d 82, 84 (1994).

■ The defendant relies in part upon *State v. McDermott*, 131 N.H. 495, 501, 554 A.2d 1302, 1305 (1989), wherein we held that "[a]

confession made in reliance upon a promise of confidentiality or a promise of immunity is involuntary." The defendant's reliance is misplaced. In *McDermott*, we upheld the suppression of a statement given to DEA agents in reliance upon a promise made to the defendant that the "statements would not leave the DEA's office." *McDermott*, 131 N.H. at 499, 554 A.2d at 1304. This is unlike the instant case. Here, during the search of Big Al's Coffee House, Officer Stewart asked the defendant "between you and me" to tell him the identity of the tipster. Any promise of confidentiality in this exchange centered on the identity of the tipster, which the defendant refused to reveal. The statements made were not given in *reliance* upon any promise of confidentiality and therefore were properly admitted. *Cf. People v. Diercks*, 411 N.E.2d 97 (Ill. App. Ct. 1980) (confession given after police officer told defendant that anything he said "was between he and I" not involuntary where the promise of confidentiality did not deprive defendant of his free will).

When Trooper Lamy met with the defendant several days later, Lamy specifically said that he had been sent to persuade the defendant to reveal the tipster's identity. He did promise that he himself would reveal any disclosures only to Deputy Chief Brodeur. This is unlike the situation in *McDermott*, however, where the defendant was assured that his statements would not leave the DEA office and that they would not be used against him. *See McDermott*, 131 N.H. at 499, 554 A.2d at 1304. Here, Lamy made no promise that the defendant's statements would not be used against him, and the defendant knew that his statements were to be given to the deputy chief of the Manchester police who had at that time made no promises not to further disseminate them. Further, that the defendant was told that his cooperation would be taken into consideration and that he should speak to others about what form the consideration would take belies any argument that he reasonably believed that his statements would go no further than Deputy Chief Brodeur. We do not find the trial court's determination to allow in the statements to be against the manifest weight of the evidence.

■ The defendant also argues that his statements to Lamy should have been suppressed because they were motivated by Lamy's promise that he would inform those who sent him to talk with the defendant that he had cooperated. A statement by a police officer that a defendant's cooperation will be taken into account is not dispositive of the voluntariness of a confession. *State v. Reynolds*, 124 N.H. 428, 434, 471 A.2d 1172, 1175 (1984). Rather, "all the facts must be examined and their nuances assessed to determine

whether, in making the promise, the police exerted such an influence on the defendant that his will was overborne." *Id.* The trial court determined that the confession was not induced by the promise that the defendant's cooperation would be made known because

> "Lamy did not mischaracterize the nature of the interview and did not make promises directly or indirectly related to criminal proceedings in the instant case. . . . [Lamy] did not mislead Beland into thinking that Lamy was authorized to provide Beland with any promises or assurances regarding the gambling investigation. Furthermore, the testimony indicates that at no time did Sgt. Lamy promise Beland that he would not be prosecuted or that he would receive a more lenient sentence in exchange for his cooperation in the gambling investigation. Under the totality of the circumstances of this case, the Court finds that Beland's statements were voluntarily made to Sgt. Lamy."

We hold that the trial court's decision on this issue is amply supported by the record. Lamy made no direct promises but merely told the defendant that his cooperation would in some manner be taken into consideration by the authorities, and that he should ask others what form that consideration might take. Given the totality of the circumstances, we cannot find that the trial court erred in ruling that the confession was voluntary.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.