206

Hillsborough-northern judicial district
No. 94-524

THE STATE OF NEW HAMPSHIRE

v.

JAMES AUBUCHONT

July 19, 1996

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. After a jury trial in Superior Court (*Barry*, J.), the defendant, James Aubuchont, was convicted of first degree assault on his infant son. *See* RSA 631:1 (Supp. 1995). On appeal, he argues that the Superior Court (*Groff*, J.) erred in denying his pretrial motion to suppress statements he made to police. We affirm.

On June 8, 1993, the defendant brought his three-week-old son to the Hitchcock Clinic in Bedford, where the child was diagnosed as having a broken leg. The doctor arranged for the child to be admitted to the Elliot Hospital. When neither the defendant nor the child's mother could explain the cause of the injury, the doctor reported the injury to the division for children, youth, and families (DCYF) as suspicious. *See* RSA 169-C:29 (1994). DCYF notified the Manchester Police Department, and two officers went to Elliot

Hospital to investigate. The officers arranged to interview the defendant and the child's mother. The defendant admitted to the officers that he had struck the child several times (the first confession). The defendant, however, was not informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to the interview. When the interview ended, the officers instructed the defendant to report to the Manchester Police station the next day for more questioning.

When the defendant arrived at the police station the following afternoon, he was informed that he would be arrested and was advised of his *Miranda* rights. He executed a written waiver form, and during the interrogation that followed, he admitted to striking the child on the buttocks (the second confession). He then prepared a written statement admitting to the assault and was formally arrested.

Before trial, the defendant moved to suppress statements made during both the police station interview and the hospital interview. The superior court suppressed statements made at the hospital, finding that although the statements were voluntarily given, the defendant was "in custody" during the hospital interview and as such *Miranda* warnings were required. The court, however, rejected the defendant's argument that the unwarned confession at the hospital so tainted the police station confession that the latter confession was rendered inadmissible as well. The defendant was subsequently convicted, and this appeal followed.

The defendant argues that part I, article 15 of the State Constitution requires that the defendant's second confession be suppressed as the "fruit" of the inadmissible first confession. *See State v. Gravel*, 135 N.H. 172, 180, 601 A.2d 678, 683 (1991); *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). He concedes that the first confession was not obtained through police coercion. *Cf. State v. Dellorfano*, 128 N.H. 628, 635–37, 517 A.2d 1163, 1168 (1986) (under Federal Constitution, only coerced unwarned statements require suppression of derivative evidence). In addition, he does not challenge the trial court's finding that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights before giving the second confession. *See State v. Torres*, 130 N.H. 340, 342–43, 540 A.2d 1217, 1219 (1988). Therefore, we limit our inquiry to whether a properly warned second confession nonetheless is rendered inadmissible as a result of the first unwarned and uncoerced confession. *See State v. Hewes*, 558 A.2d 696, 700–01 (Me. 1989).

While we have addressed this issue in the context of the fifth amendment to the Federal Constitution, *see Dellorfano*, 128 N.H. at

635, 517 A.2d at 1168, our decision today rests on our own constitutional guarantees. "Because the State Constitution provides greater protection to a criminal defendant with respect to . . . confessions than does the Federal Constitution, we decide this case under the State Constitution with reference to federal cases only to aid our analysis." *State v. Carroll*, 138 N.H. 687, 690–91, 645 A.2d 82, 84 (1994) (citation omitted); *see, e.g., State v. Carpentier*, 132 N.H. 123, 128, 562 A.2d 181, 184 (1989).

As a preliminary matter, the State argues that the defendant has waived this argument on appeal. The theory of the defense was that the defendant did not injure the child and that his confession at the police station was coerced. Defense counsel made the strategic decision at trial to introduce the previously suppressed hospital statements into evidence to support his claim that his second confession was involuntary. The State argues that the defendant's constitutional claim was waived, because by introducing the first confession, the defendant cannot now claim that the second confession was a "fruit of the poisonous tree."

■ This argument is without merit. While introduction of the previously suppressed first confession was the product of a strategic choice by the defense, that choice would have been unnecessary absent a ruling that the second confession was admissible. Introduction of the first confession served no other purpose than to give context to the argument that the second was involuntary. Further, his objection to the admission of the second confession was never waived. *Cf. State v. Bassett*, 139 N.H. 493, 497, 659 A.2d 891, 894–95 (1995) (considering only information available before trial when reviewing *in limine* motion to avoid "pitfall of justifying . . . pretrial ruling based upon the defendant's response at trial"). We conclude, therefore, that his decision to introduce the first confession should not result in the waiver of his motion to suppress the second. *See id; State v. Goodrich*, 432 A.2d 413, 419 (Me. 1981); *State v. Eugene*, 340 N.W.2d 18, 29 (N.D. 1983) (defendant did not waive his objection to an adverse ruling on a motion *in limine* by introducing that evidence on direct examination).

■ Having found that the defendant's claim was not waived, we now discuss its merits. The defendant argues that in interpreting part I, article 15, we should reject the United States Supreme Court's ruling that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion," *Oregon v. Elstad*, 470 U.S. 298, 314 (1985), which would render the second confession presumptively inadmissible. The

defendant asserts that instead, we should follow those jurisdictions which hold that, pursuant to state constitutional law, "extraction of an illegal, unwarned confession from a defendant raises a *rebuttable* presumption that a subsequent confession, even if preceded by proper *Miranda* warnings, is tainted by the initial illegality," *State v. Smith*, 834 S.W.2d 915, 919 (Tenn. 1992), and therefore, the State must establish "that the constitutional right to be free from self-incrimination was not waived due solely to the psychological pressures resulting from giving the previous statement." *Id.* at 921; *see, e.g., Com. v. Smith*, 593 N.E.2d 1288, 1295–96 (Mass. 1992). We reject this approach. Instead, we apply our traditional part I, article 15 due process voluntariness inquiry and ask whether "considering the totality of the circumstances," *Carroll*, 138 N.H. at 691, 645 A.2d at 84, the second confession "is the product of an essentially free and unconstrained choice." *Id.*; *see Hewes*, 558 A.2d at 700–01; *see also Gravel*, 135 N.H. at 180–83, 601 A.2d at 683–85.

■ The State had the burden of proving beyond a reasonable doubt that the defendant voluntarily confessed, *see Carroll*, 138 N.H. at 691, 645 A.2d at 84, and the trial court found beyond a reasonable doubt that the defendant's second confession was voluntary. "We will not overturn the trial court's decision unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *State v. Laurie*, 135 N.H. 438, 445, 606 A.2d 1077, 1080 (quotation omitted), *cert. denied*, 506 U.S. 886 (1992).

Our review of the record reveals that this determination was not against the manifest weight of the evidence. The police station interview occurred approximately seventeen hours after the hospital interview, and during that period, the defendant was not in custody. The trial court properly found that once the defendant arrived at the station, the evidence "is virtually uncontradicted" that he was advised of his *Miranda* rights, understood them, and waived them.

■ While the officers did not inform the defendant that the first confession would not be used against him, *see State v. Juarez*, 903 P.2d 241, 248 (N.M. Ct. App.), *cert. denied*, 899 P.2d 1138 (N.M. 1995), and in fact scheduled the interview to "go over a statement that [the defendant] had given . . . at the hospital," this alone does not give rise to the conclusion that the second confession was involuntary. In addition to the factors noted above, the defendant himself testified that he *agreed to speak* with the police in order to "deny what I had said the day before," and that he waived his right to have a lawyer present "[b]ecause the first thing I told them [was]

I wasn't going to repeat what I said at the hospital because it was not true." Further, the record supports the trial court's finding that the officers "did not coerce [the defendant] nor resort to trickery or deceit in any way." Because, under the totality of the circumstances, the defendant's second confession was voluntarily given, it was properly admissible at trial.

*Affirmed.*

All concurred.