Belknap
No. 2002-288

THE STATE OF NEW HAMPSHIRE

v.

GERALDINE SPENCER

Argued: April 10, 2003
Opinion Issued: June 30, 2003

*Peter W. Heed,* attorney general (*Susan P. McGinnis,* attorney, on the brief and orally), for the State.

*Landya McCafferty,* assistant appellate defender, of Dover, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Geraldine Spencer, appeals from her conviction of one count of forgery, *see* RSA 638:1 (1996), and one count of theft by unauthorized taking, *see* RSA 637:3 (1996). She argues that the Superior Court (*Smukler,* J.) erred by denying her motions to suppress her pre-*Miranda* statement and silence and her post-*Miranda* confession. *See Miranda v. Arizona,* 384 U.S. 436 (1966). We affirm.

The following facts were adduced at the suppression hearing. Detective Kristian Kelley and Sergeant Kevin Keenan went to the defendant's house to arrest her for forging checks stolen from a customer at a grocery store. After the defendant was told that she was being arrested for forgery, she stated that "she didn't know anything about it," and "didn't know why she was being arrested." The defendant professed her innocence and told the officers that they had better know what they were doing. She was taken into custody, handcuffed and escorted to a police cruiser. Sergeant Keenan testified that the defendant was "yelling that we had the wrong person" while "trying to pull away from us" because "[s]he didn't want to be taken into custody."

In response, Sergeant Keenan showed the defendant bank surveillance photographs in which a person who appeared to be the defendant was cashing a check and said, "[T]his is your picture." The defendant calmed down and told the police that she had children and did not want to go to jail. Detective Kelley testified that at that point, Sergeant Keenan stated that "if you're cooperative with us, we will explain the fact that you do have three kids and do what we can to try to make sure that you get back to those kids, make that recommendation to the judge when [you go] for arraignment." The defendant was calm and quiet for the remainder of the trip to the police station.

At the police station, the defendant was read her *Miranda* rights and given a *Miranda* waiver form on which she marked that she understood each right. She then waived her rights. She was interviewed for approximately one hour and confessed to the charged crimes.

Prior to trial, the defendant filed a motion to suppress her post-*Miranda* confession, claiming that her waiver was not a knowing, voluntary and intelligent waiver because "the Gilford police threatened that unless she gave a statement she would not be released, so that her

children would be left uncared for." The defendant asserted that she would not have given her statements had she not been threatened.

At the suppression hearing, the defendant also argued that the police violated *Miranda* by not giving her warnings prior to showing her the bank surveillance photographs. The trial court denied the motion to suppress, finding that the police did not threaten the defendant, but it did not address the issue of the bank surveillance photographs. The defendant filed a motion to reconsider arguing that the showing of the photographs was tantamount to interrogation for the purposes of *Miranda* because it was likely to elicit an incriminating response. Accordingly, the defendant argued that "everything [she] said subsequent to her being shown the photographs should be suppressed." The trial court denied the motion. The defendant was convicted, and this appeal followed.

On appeal, the defendant argues that her rights under Part I, Article 15 of the State Constitution and the Fifth Amendment of the Federal Constitution were violated. She argues that her statements and silence in the police cruiser after being shown the bank surveillance photographs should have been suppressed because Sergeant Keenan violated *Miranda* by engaging in the functional equivalent of interrogation in eliciting her response. She further argues that her *Miranda* waiver and subsequent confession at the police station should have been suppressed because neither was voluntary. She argues that either the first *Miranda* violation tainted her waiver and subsequent confession or a police promise coerced her into waiving her rights and confessing.

We first address each of the defendant's arguments under the State Constitution, *State v. Ball*, 124 N.H. 226, 231-33 (1983), and cite federal opinions only to aid in our analysis. *Id.*

## I. Pre-Miranda statement and silence

Before the defendant's responses made during a custodial interrogation may be used as evidence against her, the State must prove, beyond a reasonable doubt, that she was warned of her constitutional rights, that she waived those rights, and that any subsequent statements were made knowingly, voluntarily and intelligently. *See State v. Johnson*, 140 N.H. 573, 577 (1995). There is no question that the defendant was in custody at the time she was shown the surveillance photographs. Thus, the first issue we review is whether Sergeant Keenan interrogated the defendant by showing her the bank surveillance photographs.

In reviewing a determination of interrogation, we have deferred to the trial court if it applied the appropriate legal standard, and its factual findings were sufficient and not contrary to the manifest weight of the

evidence. *See State v. Dedrick*, 132 N.H. 218, 226 (1989), *cert. denied*, 494 U.S. 1007 (1990). In light of our holding in *State v. Ford*, 144 N.H. 57 (1999), however, we find it necessary to clarify our standard of review. In *Ford*, we held that "[b]ecause the ultimate determination of custody [in *Miranda* cases] requires an application of a legal standard to historical facts, it is not merely a factual question but a mixed question of law and fact," *id.* at 62, and accordingly reviewed the trial court's ultimate determination of custody *de novo*, *id.* at 63. Likewise, whether the defendant was subjected to interrogation is a mixed question of law and fact. *See, e.g., United States v. Moreno-Flores*, 33 F.3d 1164, 1168 (9th Cir. 1994); *State v. Juarez*, 903 P.2d 241, 244 (N.M. Ct. App. 1995). Thus, while we will continue to defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence, we will review the ultimate determination of interrogation *de novo*. *See Juarez*, 903 P.2d at 244; *see also Ford*, 144 N.H. at 63.

■ Interrogation for *Miranda* purposes occurs where "a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The functional equivalent of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (footnote omitted).

■ The defendant argues that Sergeant Keenan's use of the bank surveillance photographs was the functional equivalent of interrogation. We disagree. Sergeant Keenan's action in response to the defendant's repeated questions about the basis for her arrest and claims of innocence cannot be considered interrogatory. Courts have held that a police officer's response to certain inquiries by the defendant does not constitute interrogation under *Innis*. *See, e.g., United States v. Briggs*, 273 F.3d 737, 740-41 (7th Cir. 2001); *United States v. Conley*, 156 F.3d 78, 83 (1st Cir. 1998); *United States v. Benton*, 996 F.2d 642, 644 (3d Cir.), *cert. denied*, 510 U.S. 1016 (1993); *United States v. Taylor*, 985 F.2d 3, 8 (1st Cir. 1993). In *Benton*, for example, the court admitted the defendant's response to a police officer's explanation of why the defendant was being arrested because the explanation was a response to the defendant's questions about his arrest. *Benton*, 996 F.2d at 643, 644. In *Taylor*, the court concluded that the defendant's question - "why is this happening to me?" - was a direct request for an explanation as to why she was under arrest. *Taylor*, 985 F.2d at 8. Thus, the court held that the police officer's response to the question was not the functional equivalent of interrogation. *Id.*

In the present case, the defendant stated that "she didn't know why she was being arrested," "that she didn't know anything about forgery," and that the officers "had better know what they were doing." Sergeant Keenan testified at the suppression hearing that the defendant was "trying to pull away from us" and "didn't want to be taken into custody." The officers testified that she was shown the photographs in an attempt to calm her down and explain the basis for her arrest, not to elicit an incriminating response. *Cf. United States v. Crisco*, 725 F.2d 1228, 1232 (9th Cir. 1984) (where agent commented on incriminating evidence to explain the arrest, action not the functional equivalent of interrogation). While the officer's intent in showing the photographs is not conclusive, it is relevant in determining whether the action was the functional equivalent of interrogation. *See United States v. Lynch*, 813 F. Supp. 911, 916 (D.N.H. 1993).

We cannot say that Sergeant Keenan should have known that showing the defendant the photographs was reasonably likely to elicit an incriminating response. The photographs were not shown in a way that required an affirmative response from the defendant, *cf. Shedelbower v. Estelle*, 885 F.2d 570, 573 (9th Cir. 1989), *cert. denied*, 489 U.S. 1092 (1991), but rather were shown in response to the defendant's apparent confusion over being arrested, *cf. Briggs*, 273 F.3d at 740-41 (where police officer responded to suspect's question about what would happen to him, action not the functional equivalent of interrogation). Moreover, we see no reason why Sergeant Keenan should have expected the defendant to cease her protestations of innocence. Even after being told the charges that led to her arrest, the defendant continued to claim her innocence and question her arrest. Sergeant Keenan could have reasonably concluded that the defendant would respond to the photographs in a similar manner. *Cf. State v. Guajardo*, 135 N.H. 401, 403-04 (1992). In sum, we find no error in the trial court's denial of the defendant's motion to suppress, and thus the defendant's response to viewing the photographs was properly admitted.

## II. *Miranda waiver and subsequent confession*

The defendant argues that her *Miranda* waiver and subsequent confession were tainted by Sergeant Keenan's violation of *Miranda* in showing her the bank surveillance photographs. *See generally State v. Aubuchont*, 141 N.H. 206 (1996). However, because we hold that the defendant's unwarned statement and silence were not elicited in violation of *Miranda*, we need not address this argument.

Finally, the defendant argues that her waiver of *Miranda* rights was coerced by a police promise to obtain personal recognizance bail in exchange for her cooperation. In her motion to suppress, the defendant

argued that the officer's comment, that "if you're cooperative with us, we will explain the fact that you do have three kids and do what we can to try to make sure that you get back to those kids, make that recommendation to the judge when [you go] for arraignment," was a threat that coerced her into waiving her *Miranda* rights and confessing. On appeal, she argues that this statement was a promise which had the same coercive effect.

While the concepts of threat and promise are different, prompting concern over whether the defendant's argument has been preserved, *see State v. Cole*, 142 N.H. 519, 523 (1997) (arguments not raised below are not preserved for appellate review), the defendant asserted at oral argument that, in this case, the officer's comment could properly be interpreted as either a threat or a promise. In other words, the defendant urges us to review the trial court's ruling as if the court had denied her motion to suppress because it found that the defendant's *Miranda* waiver and confession were not coerced by a police promise. Because the State does not argue that the defendant's argument was not preserved for appellate review, we will review the trial court's ruling accordingly.

■ "Our State Constitution requires the State to prove beyond a reasonable doubt that the defendant's statements were made voluntarily. Whether a confession is voluntary is initially a question of fact for the trial court, whose decision will not be overturned unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *State v. Aubuchont*, 147 N.H. 142, 146 (2001) (quotation and citation omitted); *see also State v. Sullivan*, 130 N.H. 64, 69 (1987) (applying same standard when reviewing trial court's finding on voluntariness of *Miranda* waiver). "To be considered voluntary, a confession must be the product of an essentially free and unconstrained choice and not be extracted by threats, violence, direct or implied promises of any sort, or by the exertion of any improper influence." *State v. Monroe*, 142 N.H. 857, 864 (1998) (quotation and brackets omitted), *cert. denied*, 525 U.S. 1973 (1999).

"In determining the voluntariness of the confession, the trial court must examine the totality of the surrounding circumstances." *State v. Beland*, 138 N.H. 735, 737 (1994). The existence of a promise is not dispositive of the question of voluntariness. *State v. Reynolds*, 124 N.H. 428, 434 (1984). "Rather, all the facts must be examined and their nuances assessed to determine whether, in making the promise, the police exerted such an influence on the defendant that [her] will was overborne." *Id.*

The trial court found that after the defendant calmed down in the police cruiser, Sergeant Keenan "stated something to the effect of because of [the defendant's] cooperating[,] the police intended to ask for her release

on P.R. bail." Thus, the trial court construed Sergeant Keenan's comment as a response to the defendant's cooperation, rather than as a promise in exchange for future cooperation. The defendant argues that the trial court made an erroneous factual finding because Detective Kelley testified that Sergeant Keenan told the defendant that "*if* you're cooperative" he would try to help her rather than "because of her cooperating" as the court found. However, we conclude that the trial court's finding is not against the manifest weight of the evidence. Detective Kelley did not testify that her recollection of Sergeant Keenan's statement was a direct quote. In fact, Detective Kelley testified that Sergeant Keenan's statement, to the effect of "you know, we'll do what we can, and we'll make that recommendation, that we understand that [the defendant has] three children," was made in response to the defendant's becoming calm and discussing how she wanted to get back to her children. Viewed in the light most favorable to the State, this characterization of Sergeant Keenan's statement supports the trial court's finding that Sergeant Keenan's comment was a response to the defendant's conduct.

The defendant argues that the timing of the officer's comment to her renders her subsequent waiver and confession the product of coercion. The defendant argues that an offer to help is more likely to have a coercive effect on a *Miranda* waiver and subsequent confession if made prior to the defendant's waiver rather than after it. *Cf. State v. Elbert*, 125 N.H. 1, 11 (1984) (waiver not involuntary because, in part, the record reflected that the mention of leniency came after the waiver, not before it). However, this is not a case in which the police conditioned a promise to help the defendant upon obtaining an incriminating statement. *State v. Ray*, 489 N.W.2d 558, 565 (Neb. 1992) (a defendant's statement is inadmissible if totality of the circumstances shows that police offered a benefit in exchange for a statement). The officer's comment came immediately after the defendant ceased protesting the arrest and became calm. Because the comment was made while neither officer was attempting to obtain a statement from the defendant, and because the defendant had already done what she had been asked to do, which was to calm down and stop protesting her arrest, it is unlikely that she would have interpreted the statement as being a promise for a future *Miranda* waiver and confession.

Moreover, we have recognized that offers to inform other authorities of the defendant's cooperation are not as coercive as other types of promises, such as those for confidentiality or immunity. *See State v. McDermott*, 131 N.H. 495, 501 (1989). Here, Sergeant Keenan merely offered to make a recommendation to the judge at the arraignment to "try" to assist her in obtaining personal recognizance bail. In addition, the

remaining circumstances of the defendant's waiver and subsequent confession also indicate that the defendant was not coerced. The one-hour interview was not excessively long. *Cf. Carroll*, 138 N.H. at 695. There was no evidence of threats of violence, intimidation or deprivation of food, water or sleep. *Cf. id.* Under the totality of circumstances, we conclude that the defendant was not coerced by the officer's comment into waiving her *Miranda* rights and confessing.

## III. Federal Constitutional Analysis

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986) (applying preponderance of the evidence standard); *Ford*, 144 N.H. at 60. Thus, we reach the same result on all issues under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BROCK, C.J., and BRODERICK, J., concurred; DUGGAN, J., with whom NADEAU, J., joined, dissented.

DUGGAN, J. dissenting. Because I conclude that showing the bank surveillance photographs to the defendant constituted interrogation, I respectfully dissent.

In *State v. Dellorfano*, 128 N.H. 628, 633-34 (1986), we adopted the definition of interrogation announced in *Rhode Island v. Innis*, 446 U.S. 291 (1980).

> "[I]nterrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. . . . But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Innis*, 446 U.S. at 301-02 (footnotes omitted). We noted in *Dellorfano* that "[t]he *Innis* court interpreted the term 'interrogation' broadly." *Dellorfano*, 128 N.H. at 633-34.

In *Innis*, while the two police officers who had arrested Innis were transporting him to the police station, they exchanged comments about the danger that a missing shotgun could pose to students of a nearby school for handicapped children. *Innis*, 446 U.S. at 294-95. Innis "interrupted the conversation" and volunteered to show the police where the gun was located. *Id.* at 295. The Court held that there had been no interrogation because the "conversation was ... nothing more than a dialogue between the two officers to which no response from [Innis] was invited." *Id.* at 302.

Here, by contrast, the police confronted the defendant directly by showing her the photographs and saying, "This is your picture." Up to this point, the defendant had loudly and persistently proclaimed her innocence. Given the defendant's loquaciousness and the dramatic confrontation with overwhelming evidence of her guilt, the police should have known that she would respond and that it was reasonably likely her response would be incriminating.

This is unlike the cases which have held there is no interrogation when the police respond "to a direct inquiry by the defendant." *United States v. Briggs*, 273 F.3d 737, 739 (7th Cir. 2001) (where defendant asked what would happen to co-defendant, police officer's response that "both men would be charged with possession of cocaine" not interrogation); *United States v. Conley*, 156 F.3d 78, 81, 83 (1st Cir. 1998) (where defendant asked postal inspectors to tell him what evidence they had against him, statements blurted out by defendant during recitation of evidence not the product of interrogation); *United States v. Benton*, 996 F.2d 642, 644 (3d Cir. 1993) (where, in response to defendant's inquiry, officer "did nothing more than tell [the defendant] why he was being arrested," police did not engage in interrogation); *United States v. Taylor*, 985 F.2d 3, 6-7, 8 (1st Cir. 1993) (where defendant asked police why she had been arrested and police officer replied, "You can't be growing dope on your property like that," defendant's incriminating statement not the product of interrogation).

In this case, it is correct that "[t]he photographs were not shown in a way that required an affirmative response from the defendant," *cf. Shedelbower v. Estelle*, 885 F.2d 570, 573 (9th Cir. 1989), but the test under *Innis* is not so narrow. It is sufficient if the police conduct "would encourage [the defendant] to make some spontaneous incriminating remark." *Id.*; *see, e.g., People v. Ferro*, 472 N.E.2d 13, 16-17 (N.Y. 1984) (showing defendant furs stolen from decedent's residence held to be interrogation); *State v. Nixon*, 599 A.2d 66, 67 (Me. 1991) (showing defendant sketch of crime scene was interrogation); *State v. Uganiza*, 702 P.2d 1352, 1355 (Haw. 1985) ("police officer should have known that the presentation of apparently overwhelming inculpatory evidence in the form

of written witnesses' statements and oral explanations of them was reasonably likely to elicit [an incriminating] response"); *Drury v. State*, 793 A.2d 567, 571 (Md. 2002) (showing defendant tire iron and stolen goods and informing him these items would be fingerprinted held to be interrogation).

The test for interrogation is an objective one. *Ferro*, 472 N.E.2d at 14. While the Court in *Innis* noted that this does not mean "that the intent of the police is irrelevant," *Innis*, 446 U.S. at 301-02 n. 7, the Court said that the subjective intent of the police may show that a particular police practice is designed to elicit an incriminating response and thus constitutes interrogation. *Id.* The Court did not say that a police officer's after-the-fact testimony that he subjectively did not intend to elicit an incriminating response should carry significant weight in the objective analysis.

Because the police violated *Miranda* by showing the bank surveillance photos to the defendant, I would remand this case to superior court to determine whether her subsequent *Miranda* waiver and confession were tainted. *See generally State v. Aubuchont*, 141 N.H. 206 (1996).

Finally, I agree that, on the facts presented, the police officer's comment regarding bail did not render the defendant's *Miranda* waiver or confession involuntary.

NADEAU, J., joins in the dissent.