NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2012-045


THE STATE OF NEW HAMPSHIRE

v.

DAVID PYLES

Argued:  November 7, 2013
Opinion Issued:  April 4, 2014


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, assistant appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J.  The defendant, David Pyles, appeals his convictions, following a jury trial in Superior Court (McHugh, J.), on three counts of pattern aggravated felonious sexual assault, see RSA 632-A:2, III (2007), arguing that the Trial Court (Mohl, J.) erred in denying his motion to suppress statements allegedly obtained in violation of his Miranda rights.  See Miranda v. Arizona, 384 U.S. 436 (1966).  We affirm.

We recite the facts as stated in the trial court's order on the motion to suppress or as supported by the record.  On January 14, 2010, Detective

Michael Bernard of the Salem Police Department called the defendant and requested that he come to the police station to talk about allegations of sexual abuse that had been made against him. The defendant complied. Once at the police station, the defendant was taken into an interview room where he was joined by Salem Police Detective Mark Donohue and Bernard. Bernard informed the defendant that the interview was being recorded and began reading him his Miranda rights from a standard form. After reading all of the rights provisions, the detective neglected to read the final provision regarding waiver of those rights. That provision stated: "HOWEVER You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting a lawyer if you so desire." (Quotation omitted.) Instead, Bernard stated: "[B]asically what this is is a waiver that I need you to sign in order for me to talk to you."

The defendant asked if he was being arrested, and Donahue replied that he was. The defendant inquired about the charges against him and claimed that he did not know what was going on. He also expressed concern about losing his job.

Donahue told the defendant that he would have to sign the waiver form if he wished to speak with the detectives. After informing the defendant he was charged with aggravated felonious sexual assault, Bernard stated that he and Donahue wanted to discuss the charges with him "to get [his] side of the story." Donahue then advised the defendant that if he "were going to try to help [him]self, this is probably the right time to do it."

The defendant again said he had no idea what the allegations against him were. Bernard stated that the detectives could not "really get into that," at which point Donahue added "unless you want to talk about it." Donahue also reminded the defendant, however, that he could "stop at any time."

After an inquiry about bail, the defendant commented on the gravity of the charge against him. Donahue again stated that it would be a good time for the defendant to "help [him]self." The defendant stated he would sign the waiver "for now" and did so. Bernard asked the defendant if he understood everything that had been read to him, to which the defendant responded, "Yeah." Bernard also offered that the form could be reread, which the defendant declined.

On appeal, the defendant argues that the trial court erred in denying his motion to suppress because "the manifest weight of the evidence reflected a reasonable doubt as to whether [he] knowingly, intelligently and voluntarily waived his Miranda rights." The defendant invokes his state and federal constitutional rights against self-incrimination. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. We first address the defendant's claim under the

State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

> Before a statement can be admitted into evidence, the State has the burden of proving beyond a reasonable doubt that the defendant was apprised of his or her constitutional rights and that the subsequent waiver was voluntary, knowing and intelligent.  On appeal, we will not reverse the trial court's finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary.

State v. Chrisicos, 148 N.H. 546, 548 (2002) (quotations, citation, and brackets omitted).

The defendant first argues that "it was both coercive and deceptive for the police to tell [him] that they could not provide information about the accusation unless he waived his Miranda rights."  He concedes that the police could have refused to provide information about the allegations against him "without regard to whether he waived his Miranda rights."  See Colorado v. Spring, 479 U.S. 564, 576 (1987) (noting that the Supreme Court has never held, and declined to hold in that case, "that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of Miranda rights"); State v. Jones, 125 N.H. 490, 493 (1984) (noting that Miranda "states no requirement to warn about the specific charges that prompt the questioning").  He argues, however, that what the police could not do was make provision of the information contingent upon his waiver of those rights.

The defendant likens his case to State v. Jones, 2009 WL 17934 (N.J. Super. Ct. App. Div. 2009), in which, during a custodial interrogation, the defendant "asked numerous times why he was arrested without receiving an answer from the detectives."  Jones, 2009 WL 17934, at *1.  As one of the detectives began reading the defendant his Miranda rights, the defendant invoked his right to counsel.  Id.  The detective then stated, "'Okay, now, I can't answer you,'" and he and the other detective present left the room.  Id.  They returned shortly and one detective "told defendant he was being charged with attempted murder, but stated they could not talk to him since he had asked for an attorney."  Id.  In upholding the suppression of the defendant's subsequent statements, the Jones court noted:

> It seems clear to us that the strategy employed by the investigators was designed to provoke the response that actually occurred, i.e., defendant became agitated and asked what the case was about.  The officers dangled the specter of defendant's prior invocation of his rights as an impediment to any further

3

information, and recited for a second time the <u>Miranda</u> rights from the form card, this time securing defendant's answers and signature.

<u>Id</u>. at *6.

We do not find <u>Jones</u> as similar as the defendant contends. First, this case does not present the issue of the detectives' failure to "scrupulously honor" the defendant's invocation of his rights by reinitiating a conversation with him. <u>Id</u>. at *5. In addition, here, the defendant was informed of the charges against him. The trial court found that the defendant was asked, in Bernard's initial call to him, to come to the police station to discuss allegations against him of sexual abuse. The court found that he also was told, prior to waiving his <u>Miranda</u> rights, that he was being charged with aggravated felonious sexual assault.

What the detectives declined to do, however, was to discuss the allegations any further without first having obtained a signed <u>Miranda</u> waiver. The defendant paints this as coercive, arguing that the detectives "told [him] that they would provide information about the accusation if and only if he agreed to waive his <u>Miranda</u> rights," despite his repeated expressions of "frustration that he did not know why he had been arrested." The record, however, does not bear out this characterization. The videotaped recording of the interview shows that the defendant asked what the charges against him were and Bernard's response — though interrupted briefly by the defendant himself — was that he was charged with aggravated felonious sexual assault. Subsequently, while the detectives were encouraging the defendant to tell his side of the story, he commented "yeah, 'cause I have no idea what the allegations are, or what they're for, or anything like that." He was not agitated and did not appear to be asking for a response. Bernard deflected the comment, stating they could not "really get into that," to which the defendant responded, "[N]o, I understand." Donahue then interjected "unless you want to talk about it," but that was followed by statements from both detectives that the defendant did not have to answer if he did not want to do so and could stop at any time. At no time during the interview was the provision of information about the charges conditioned, in any way that could be characterized as coercive, upon the defendant's waiver of his <u>Miranda</u> rights.

The defendant also argues that it was deceptive for the detectives to tell him that they could not "really get into" the allegations against him "unless [he] want[ed] to talk about it," because that was a misstatement of the law. He contends that "contrary to [the detectives'] representation, nothing prohibited the police, even without a <u>Miranda</u> waiver, from providing basic information about the charge, such as the identity of the accuser, in response to [his] requests."

4

We note again that the only request the defendant made — to be advised of the charges against him — was satisfied. The defendant did not specifically ask for the name of the accuser or any other information about the charges. Thus, the defendant's observation that "[c]ourts have held that a police officer's response to certain inquiries by the defendant does not constitute interrogation," State v. Spencer, 149 N.H. 622, 625 (2003), is beside the point.

The State contends that it was "only prudent" for the detectives to decline to provide details about the allegations because "an officer who reveals details of the accusations against the defendant may be deemed to have effectively interrogated him."

> Interrogation for Miranda purposes occurs where a person in custody is subjected to either express questioning or its functional equivalent. The functional equivalent of interrogation includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Spencer, 149 N.H. at 625 (quotations and citation omitted).

In Spencer, we held that it was not the functional equivalent of interrogation for a police officer to show a defendant bank surveillance photographs and tell her "[t]his is your picture," id. at 623, where the photographs "were shown in response to the defendant's apparent confusion over being arrested" and we could not say that the officer "should have known that showing the defendant the photographs was reasonably likely to elicit an incriminating response." Id. at 626. Notably, however, two members of the court dissented, concluding that showing the photographs to the defendant did constitute interrogation. Id. at 629 (Duggan, J., joined by Nadeau, J., dissenting); cf. Com. v. Gaul, 912 A.2d 252, 254, 256 (Pa. 2006) (police investigator engaged in functional equivalent of interrogation where, prior to giving Miranda warnings to a defendant in custody, he read the criminal complaint and affidavit of probable cause to him, prompting an incriminating response). Accordingly, we cannot discount the risks attendant upon officers divulging details of allegations to a defendant without first obtaining a Miranda waiver. Thus, we cannot conclude that it was deceptive for the detectives to say that they could not "get into" the allegations further until a waiver was obtained.

The defendant further argues that his waiver was not knowing, intelligent, and voluntary because the detectives falsely implied leniency. He argues that by repeatedly exhorting him to "help [him]self," the detectives "falsely implied

that, by waiving his Miranda rights and making a statement, [he] would secure a more lenient resolution." We disagree. "An interrogator's statement to an arrestee to 'help yourself out' is an encouragement to tell the truth and does not constitute an impermissible hope of benefit." Wilson v. State, 675 S.E.2d 11, 16 (Ga. 2009).

The defendant also contends that his waiver was not knowing, intelligent, and voluntary because the detectives "repeatedly spoke of the Miranda waiver as a matter of necessity, as opposed to choice." He points to statements by the detectives that they "need[ed]" him to sign the waiver before they could talk to him, or he to them. Such statements, however, were interspersed with those informing the defendant that it was "entirely up to [him]" whether to talk, that he did not have to answer if he did not want to, and that he had the "right to stop at any time."

The defendant points to two additional events that he contends cast doubt upon the validity of his waiver. First, he cites Bernard's statement that "[w]e just need you to acknowledge the right," and argues that that statement implied that by signing the Miranda form, the defendant was not waiving those rights, but merely acknowledging them. He also contends that the misleading and coercive quality of that statement was exacerbated by Bernard's failure to read the waiver provision at the end of the Miranda form.

We first note that "the police need not echo the exact warnings described in Miranda, but must, prior to interrogation, fully apprise a suspect of his rights to remain silent and to have counsel present, and of the State's intention to use his statements to secure a conviction." State v. Fecteau, 132 N.H. 646, 648-49 (1990). Accordingly, we hold that Bernard's failure to read the waiver portion of the standard Miranda form does not invalidate the defendant's waiver.

We are also not persuaded by the defendant's attempt to analogize his case to State v. Gullick, 118 N.H. 912 (1978), in which we observed that the record failed to "demonstrate that the defendant waived his Miranda rights," but, rather, "only suggest[ed] that the defendant understood his rights." Gullick, 118 N.H. at 915. In Gullick, the defendant started to sign the Miranda waiver, but stopped and stated he wasn't sure he should sign it. Id. at 914. He nevertheless talked to the police and the State argued on appeal that his "conduct and willingness to talk to the police after the warning was tantamount to a waiver." Id. at 915. We disagreed. Id. Here, by contrast, the defendant signed the waiver form. Before he did so, Bernard asked if he understood everything that had been read to him. The defendant answered "yeah," and declined the offer to reread the form. When asked if he had any questions, the defendant responded, "[N]o." Perhaps most telling, the defendant referred to the form as a "waiver" and said he would sign it "for

6

now," indicating that he understood not only that he was waiving his rights, but that he could reassert them at any time.

Finally, the defendant argues that "[w]hile each of these aspects, standing alone, may not have rendered the waiver invalid, . . . the cumulative effect of the conduct of the police in obtaining the Miranda waiver is that a reasonable doubt exists that the waiver was knowing, intelligent and voluntary." Having found each of the defendant's specific arguments unpersuasive, we also find his cumulative effect argument unpersuasive. Cf. State v. Ellsworth, 142 N.H. 710, 721 (1998).

We conclude that the manifest weight of the evidence, viewed in the light most favorable to the State, is not contrary to the trial court's finding that the State established beyond a reasonable doubt that the defendant validly waived his Miranda rights. See Chrisicos, 148 N.H. at 548. Because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, see id.; Colorado v. Connelly, 479 U.S. 157, 168 (1986) (holding that "the State need prove [Miranda] waiver only by a preponderance of the evidence"), we reach the same result under the Federal Constitution as we do under the State Constitution.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.