Rockingham
No. 2002-618

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL REZK

Argued: November 6, 2003
Opinion Issued: January 30, 2004

*Peter W. Heed*, attorney general (*Michael A. Delaney*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Michael Rezk, appeals his convictions by a jury on one count of theft by receiving stolen property, *see* RSA 637:7 (1996) (amended 2001), one count of attempted burglary, *see* RSA 635:1 (1996); RSA 629:1 (Supp. 2003), two counts of felon in possession of a dangerous weapon, *see* RSA 159:3 (2002), and one count of felonious use of a firearm, *see* RSA 650-A:1 (1996). On appeal, he contends that the Superior Court (*McHugh*, J.) erroneously denied his motion to suppress his confessions. We affirm in part, reverse in part, vacate in part and remand for resentencing.

I

The following facts were adduced at the suppression hearing. On March 29, 2001, a warrant was issued for the defendant's arrest for an armed robbery he allegedly committed in January 2001. The police planned to execute the warrant by stopping the defendant while he was en route to rob the same victim again. State and local police from several towns stopped the car in which the defendant was a passenger at approximately 8:00 p.m. that night. The police arrested and searched him, finding that he had multiple firearms in his possession. The police transported the defendant to the Kingston Police Department. Once there, the police advised him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). He was again advised of his *Miranda* rights when he was taken into a conference room. Each time, the officer read the *Miranda* rights to the defendant one at a time and, after each right, asked him if he understood it, to which the defendant responded affirmatively.

After reading the defendant his *Miranda* rights in the conference room, the officer asked him if he wished to speak. The defendant said he would and then asked the officer "what was in it for him." The officer replied that if he cooperated, the officer "wouldn't charge him with all the felonies." Specifically, the officer said that he would not charge the defendant with the January 2001 crime or with an attempted burglary that the defendant allegedly committed against the same victim in February 2001. The officer also told the defendant that, if he were willing to cooperate, the officer would not charge the other man who was with the defendant when he was stopped. Following these representations, the defendant confessed orally and in writing to the January 2001 crime.

Because the police wanted to videotape his statements, they transported the defendant to the Exeter Police Department, which had the necessary equipment, approximately two hours after his arrest. Once there, the police again advised the defendant of his *Miranda* rights. This time, in addition to saying that he understood each *Miranda* right after it was read

to him, the defendant signed a form acknowledging that he understood and waived those rights.

The police then videotaped their interview of the defendant. They began by advising the defendant of his *Miranda* rights once more. On tape, the defendant again indicated that he understood those rights and wished to speak with the police. The videotaped interview began at approximately 1:00 a.m. and ended at approximately 2:00 a.m.

During the interview, the defendant first discussed the January 2001 crime. He explained that he had been offered $100,000 either to collect a debt from Russell Thomas, or to kill Thomas if he refused to repay the debt. On January 26, 2001, the defendant went to Thomas' residence and threatened him with a weapon. Approximately two and one-half weeks later, after he had learned that Thomas had not repaid the debt, the defendant threatened him again. The defendant returned to Thomas' home a third time when Thomas was away. On that occasion, he broke in and took some deeds. Approximately one week before his arrest, the defendant and his associate, Philip Simard, went to Thomas' home, where the defendant cut the lines to Thomas' phone and kicked in his door.

With respect to the events of March 29, the defendant said that he and Simard were en route to Thomas' home, intending to either kill Thomas or bring him to Massachusetts to meet the person who had hired the defendant.

The State charged the defendant only for the crimes he allegedly committed on March 29. They did not charge Simard.

## II

The defendant argues that his confessions were involuntary and, therefore, their admission at trial violated his due process rights under the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. We first address the defendant's arguments under the State Constitution. *See State v. Ball*, 124 N.H. 226, 231 (1983). We rely upon federal opinions for guidance only. *See id.* at 232-33.

■ Under Part I, Article 15 of our State Constitution, the State must prove that the defendant's statements were voluntary beyond a reasonable doubt. *State v. Hammond*, 144 N.H. 401, 404 (1999). Whether a confession is voluntary is initially a question of fact for the trial court. *Id.* We will not overturn a trial court's determination that a confession is voluntary unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State. *State v. Spencer*, 149 N.H. 622, 627 (2003).

"In determining whether a confession is voluntary, we look at whether the actions of an individual are the product of an essentially free and unconstrained choice or are the product of a will overborne by police tactics." *Hammond*, 144 N.H. at 405 (quotation, ellipsis and brackets omitted). In making this determination, "[w]e examine the totality of all surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* (quotation omitted).

Relying principally upon our decision in *State v. McDermott*, 131 N.H. 495, 501 (1989), the defendant argues that we need not examine the totality of the circumstances to find his confessions involuntary because they were induced by the police officer's promise not to charge him with certain offenses and not to charge his associate, Simard. In *McDermott*, although we cited the totality of the circumstances test, we focused solely upon the existence of a police promise of confidentiality to find the defendant's confession involuntary. *See McDermott*, 131 N.H. at 500-01.

The facts of *McDermott* were unusual. In that case, the defendant was told by a federal drug enforcement agent that information he provided about a murder "would not leave the office." *Id.* at 496, 499. The agent told the defendant that his agency "simply needed the information . . . to avoid surprises" at trial and that it could never obtain cooperation from informants if it prosecuted them for the information they provided. *Id.* at 499. The defendant then confessed that he committed the murder. *Id.* Following his confession, the agent informed the defendant that because he confessed to the murder without having first been advised of his *Miranda* rights, his statements could not be used against him. *Id.* Despite these promises, the defendant was charged with committing the murder to which he confessed. *Id.*

We held that the voluntariness of the defendant's confession turned solely upon the agent's promises. *Id.* at 501. "In this case," we ruled, "to allow the government to revoke its promise after obtaining incriminating information obtained in reliance on that promise would be to sanction governmental deception in a manner violating due process." *Id.* We noted that the agent's promises were "categorically different" from other kinds of promises, which were not dispositive of the issue of voluntariness, such as a promise to inform other authorities that a defendant cooperated or a promise to recommend reduced bail. *Id.* Accordingly, we limited our *per se* rule of involuntariness to promises of confidentiality and promises of immunity from prosecution. *Id.*

The genesis for our decision in *McDermott* was the United States Supreme Court's decision in *Bram v. United States*, 168 U.S. 532 (1897). In that case, the court stated that a voluntary confession is one that was "not

. . . extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram*, 168 U.S. at 542-43 (quotation omitted). In *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991), the court expressly rejected *Bram's* prohibition against any direct or implied promise, "however slight," approving in its stead a totality of the circumstances test for determining the voluntariness of a confession. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973); *see also State v. Carroll*, 138 N.H. 687, 691 (1994).

■ ■ Modern cases have identified a variety of factors relevant to whether police promises or threats make a confession involuntary, including: (1) the nature of the promise; (2) the context in which it was made; (3) the characteristics of the individual defendant; (4) whether the defendant was informed of his *Miranda* rights; and (5) whether counsel was present. *See United States v. Pinto*, 671 F. Supp. 41, 57 (D. Me 1987). "Under the 'totality of the circumstances' test, the existence of a promise made to the defendant is not dispositive. Rather, all the facts must be examined and their nuances assessed to determine whether, in making the promise, the police exerted such an influence on the defendant that his will was overborne." *State v. Reynolds*, 124 N.H. 428, 434 (1984) (citation omitted).

"[W]hen considering what impact a promise had in overbearing the will of a suspect, courts must give qualitative, rather than quantitative weight to the promise." *State v. Watford*, 618 A.2d 358, 365 (N.J. Super. Ct. App. Div. 1992) (Havey, J., concurring). "Even a single factor may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act." *Id.* (quotation omitted); *see State v. Pillar*, 820 A.2d 1, 14 (N.J. Super. Ct. App. Div. 2003).

Since deciding *McDermott*, we have not had another occasion to apply our *per se* rule. We limit the *per se* rule we adopted in *McDermott* to the uncommon facts of that case and here examine the defendant's confessions in light of the totality of the circumstances.

On the one hand, the record contains evidence consistent with finding the confessions voluntary. For instance, neither interview was unduly lengthy. *See Spencer*, 149 N.H. at 629. The first lasted approximately two hours and the second lasted approximately one hour. *See id.* The police gave the defendant breaks and testified that they never denied him anything he requested. *See id.*

■ On multiple occasions, the police advised the defendant of his *Miranda* rights, and, on multiple occasions, the defendant waived these

rights. Although compliance with *Miranda* does not conclusively establish that his confession was voluntary, it is a factor to consider. *State v. Rodney Portigue*, 125 N.H. 352, 364 (1984).

Further, the defendant's demeanor on the videotape is consistent with finding his confessions to be voluntary. The trial court found that, on the videotape, "[t]he defendant's mood was relaxed, he had no difficulty in understanding the questions asked of him, nor did he have any difficulty in relating the events that had occurred that were of interest to the police." *See id.; see also State v. Aubuchont*, 147 N.H. 142, 148 (2001). The court further found that the defendant "was . . . able to refrain from divulging the names of individuals that the police pressed him on for information." *See Aubuchont*, 147 N.H. at 148. Additionally, the court found the defendant's handwritten statement to be "legible and coherent."

Conversely, other evidence in the record is consistent with finding the defendant's confessions involuntary. For instance, the police detained the defendant for over five hours. *See State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982) (length of detention is one factor bearing upon issue of voluntariness). Further, the defendant testified that he was under the influence of heroin during questioning. *Cf. State v. Chapman*, 135 N.H. 390, 400-01 (1992) (defendant's inebriation did not undermine voluntariness of confession). Moreover, it is undisputed that the defendant was alone and in custody when he confessed, without benefit of counsel.

■ More importantly, the nature of the police promises in this case "clearly had the likelihood of stripping [the] defendant of his capacity for self-determination." *Pillar*, 820 A.2d at 15 (quotation omitted). It is one thing for an officer to promise to recommend leniency to the prosecutor; it is quite another for an officer to promise that the prosecutor will not charge the defendant with specific crimes. *See United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987), *cert. denied*, 486 U.S. 1010 (1988). "General encouragement to cooperate is far different from specific promises of leniency." *Id.* "[I]n most circumstances, speculation that cooperation will benefit the defendant or even promises to recommend leniency are not sufficiently compelling to overbear a defendant's will." *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994); *see State v. Beland*, 138 N.H. 735, 738-39 (1994).

■ By contrast, a promise not to charge the defendant with the very crime for which he was arrested is a promise that is "so attractive" as to "render a resulting confession involuntary." *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987). While "[a]n officer can ordinarily tell a suspect that it is better to tell the truth," the officer crosses the line if he

"tells the suspect what advantage is to be gained or is likely from making a confession." *Hodges*, 326 N.W.2d at 349; *see also Carroll*, 138 N.H. at 692 (distinguishing between exhortation to tell truth and promise of leniency).

A specific promise of leniency should the defendant confess is akin to a threat of harsher punishment should the defendant remain silent. *See Leach v. State*, 845 S.W.2d 11, 13 (Ark. 1993) (whether prosecutor's statement was "threat" to prosecute for capital murder or a "promise" not to do so is immaterial; a threat is no more odious than a promise). "[B]oth types of statements are simply different sides of the same coin: 'waive your rights and receive more favorable treatment' versus 'exercise your rights and receive less favorable treatment.'" *Harrison*, 34 F.3d at 891. Both types of statements are antithetical to State and federal constitutional values. *See* Dix, *Promises, Confessions, and Wayne LaFave's Bright Line Rule Analysis*, 1993 U. ILL. L. REV. 207, 224 (1993).

> We must never forget that the reason courts suppress involuntary confessions is that the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial, and not an inquisitorial, system—a system in which the State must establish guilt by evidence independently and freely secured, and may not, by coercion, prove its charge against an accused out of his own mouth.

*State v. Tuttle*, 650 N.W.2d 20, 36 (S.D. 2002) (quotation omitted).

In this case, the police did more than merely exhort the defendant to be truthful; they made specific promises of leniency. The message was clear: if the defendant confessed, he would not be charged with any offense other than those he allegedly committed on the night of his arrest. If he did not confess, he faced harsher treatment. As one of the officers testified:

Q    And what was the nature of his conversation?
A    Well, it was—it was—basically he wanted to know what was in it for him, basically. And I explained to him if he cooperates that I would—there was—there was several felony charges, and I wouldn't charge him with all the felonies.

. . . .

Q    [D]id you make any promises to him with regards to any charges?
A    I told him that if he cooperates then I'll work with him and will not charge him with the—the burglary which

> occurred on one occasion and the second attempted
> burglary which happened a few days afterwards. . . . And
> I told [him] that if he's willing to cooperate then I
> would—I wouldn't charge Phil Simard with anything.

In effect, the defendant and police engaged in station house plea-bargaining. This type of plea-bargaining "requires more constitutional concern than standard plea bargaining." Dix, *supra* at 228. In standard plea-bargaining, the defendant is protected by the right to counsel and the right to scrutiny of the plea by a judicial officer. *See id.* In station house plea-bargaining, the defendant has only "the less rigorous right to representation extended as an aspect of self-incrimination protection" and makes his or her plea decision only before prosecutors, or, in this case, the police. *Id.*

■ Under these circumstances, we hold that the defendant's confessions were induced by specific promises of leniency and were involuntary. The trial court's contrary determination is against the manifest weight of the evidence, as viewed in the light most favorable to the State.

In light of our ruling that the defendant's confessions were involuntary under the State Constitution, we need not address his arguments under the Federal Constitution or his alternative argument that his confessions were inadmissible because he did not voluntarily waive his *Miranda* rights.

■ The State argues that the defendant's confessions were voluntary, although induced by police promises of leniency, because the defendant initiated the discussions about cooperating in exchange for leniency. *See Reynolds*, 124 N.H. at 434-35. The defendant's inquiry about the opportunity for leniency did not eliminate the risk that his will would be overborne in subsequent negotiations, however. *See* Dix, *supra* at 236.

The facts of this case are unlike those in *Reynolds*, in which we affirmed the trial court's finding of voluntariness, in part, because the defendant initiated bargaining with the police. *Reynolds*, 124 N.H. at 434-35. In *Reynolds*, the defendant initiated negotiations for a recommendation of release on his own recognizance a full day after he waived his *Miranda* rights. *Id.* at 431. In the case before us, the defendant initiated negotiations immediately after waiving his *Miranda* rights. More importantly, in *Reynolds*, the police made no promises to the defendant, telling him that they could neither promise nor guarantee that he would be released on personal recognizance. *Id.* By contrast, in this case, the police

explicitly promised that the defendant and Simard would not be charged with particular crimes.

■ The State also contends that the defendant's confessions were voluntary because the police kept their promises. *See Tippitt v. State*, 686 S.W.2d 420, 421 (Ark. 1985); *see also United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir.), *cert. denied*, 498 U.S. 875 (1990). In our view, the absence of deceit in this case does not make the police promises permissible. Even a sincere promise of leniency may be sufficient to bar a confession given by a defendant while in custody and without benefit of counsel, "not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." *Brady v. United States*, 397 U.S. 742, 754 (1970).

The State asserts in the alternative that any error in the admission of the defendant's confessions was harmless with respect to the two felon in possession charges and the theft by receipt of stolen property charge. In *State v. Dupont*, 149 N.H. 70, 75 (2003), in dicta, we stated that admission of a coerced confession was an error to which the harmless error doctrine did not apply. Our statement was based upon a pre-*Fulminante* decision, *State v. Williams*, 133 N.H. 631, 634 (1990).

■ In *Fulminante*, the United States Supreme Court ruled that admission of an involuntary confession is a trial error similar in degree and kind to erroneous admission of other evidence, and, therefore, like the erroneous admission of other evidence, should be subject to harmless error analysis. As the court explained:

> The evidentiary impact of an involuntary confession and its effect upon the composition of the record, is indistinguishable from that of a confession obtained in violation of the Sixth Amendment—of evidence seized in violation of the Fourth Amendment—or of a prosecutor's improper comment on a defendant's silence at trial in violation of the Fifth Amendment. When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt.

*Fulminante*, 499 U.S. at 310. Admission of an involuntary confession is a "trial error" that, unlike a "structural defect," can be "quantitatively assessed in the context of other evidence presented in order to determine

whether [the error] was harmless beyond a reasonable doubt." *Id.* at 307-09; *see State v. Ayer*, 150 N.H. 14, 24 (2003). We find the court's reasoning in *Fulminante* persuasive and adopt it.

■■■ For an error to be harmless, the State must prove beyond a reasonable doubt that it did not affect the verdict. *State v. Elienne*, 146 N.H. 115, 118 (2001). To analyze whether admission of an involuntary confession was harmless error, we must quantitatively assess the offending statements "in the context of other evidence presented . . . to determine the effect [they] had on the trial." *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (quotation and brackets omitted). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *State v. Thompson*, 149 N.H. 565, 567 (2003) (quotation omitted).

We agree with the State that admission of the coerced confessions was harmless with respect to the two felon in possession charges and the receipt of stolen property charge. At trial, the State offered testimony by two of the arresting officers. One testified to finding a firearm on the defendant's person during a pat-down search. When the officer ran the weapon's serial number, he discovered that it had been stolen. The other officer testified to searching the vehicle in which the defendant had been a passenger on the night of his arrest, pursuant to a warrant, and finding a semi-automatic pistol under the front passenger seat.

The owner of the firearm found on the defendant's person also testified at trial. He testified that he knew the defendant, the defendant knew that he had a gun, the defendant knew that he kept his home unlocked, and that the firearm found on the defendant's person was his and had been missing for approximately two years. On cross-examination, he testified that he previously told the defendant that he was "90 percent" sure that the defendant had stolen his gun.

■■■ The defendant's confessions were merely cumulative of and inconsequential in relation to this evidence. We hold that they did not affect the outcome of the trial with respect to the felon in possession and receipt of stolen property charges. *See Thompson*, 149 N.H. at 567.

Accordingly, we affirm the defendant's two convictions for felon in possession of a dangerous weapon and one conviction for receipt of stolen property, and reverse his convictions for attempted burglary and felonious use of a firearm, and remand. Because evidence of the unlawful attempted burglary and felonious use of a firearm convictions may have affected the

sentences imposed for his convictions for felon in possession of a dangerous weapon and receipt of stolen property, we vacate those sentences and remand for resentencing.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

NADEAU and DUGGAN, JJ., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. While I agree with adopting a totality of the circumstances test and restricting the *per se* rule to the facts of *State v. McDermott,* 131 N.H. 495, 501 (1989), I respectfully dissent because I believe that the trial court's finding of voluntariness was apt.

"To be voluntary, a confession must be the product of an essentially free and unconstrained choice." *State v. Reynolds,* 124 N.H. 428, 434 (1984) (quotation omitted). "The decision to confess must be freely self-determined." *Id.* (quotation omitted). "The defendant's will to resist must not be overborne, nor can his capacity for self-determination be critically impaired." *Id.* (quotations, brackets and citations omitted).

We review the trial court's determination that a confession is voluntary deferentially; we will not overturn it unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State. *State v. Spencer,* 149 N.H. 622, 627 (2003). Viewing the totality of the circumstances in this case in the light most favorable to the State, I believe that the trial court could reasonably have determined that the defendant's confessions were voluntarily made.

There is no evidence here that the defendant's will was overborne by police tactics. He was hardly subject to "sinister police procedure." *United States v. Harris,* 914 F.2d 927, 933 (7th Cir. 1990). The police interviewed the defendant in a normal room for reasonable lengths of time, gave him breaks, and read him his *Miranda* rights on numerous occasions. *See id.*; *see also Miranda v. Arizona,* 384 U.S. 436 (1966). They did not engage in coercive tactics. *See Colorado v. Connelly,* 479 U.S. 157, 167 (1986). "At no point did the police threaten violence or serious retaliation if [the defendant] refused to speak." *United States v. Byram,* 145 F.3d 405, 408 (1st Cir. 1998).

By negotiating for reduced charges, the defendant showed that his capacity for self-determination was intact, not "critically impaired." *Reynolds,* 124 N.H. at 434. Like the defendant in *Reynolds,* the defendant here *initiated* negotiations with the police. *Id.* He sought, and got, a deal.

The police officer's honest promise not to charge the defendant and his associate with specific crimes did not transform the defendant's otherwise voluntary confessions into involuntary confessions. *See United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995).

Although I would hold that admitting the confessions was not error at all, I agree with the majority that it was harmless with respect to the two felon in possession charges and the receipt of stolen property charge.