Hillsborough-southern judicial district
Nos. 2008-885
    2008-886

THE STATE OF NEW HAMPSHIRE

v.

ANTHONY PARKER

Argued: January 20, 2010
Opinion Issued: May 6, 2010

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the briefs and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the briefs and orally, for the defendant.

HICKS, J. The defendant, Anthony Parker, appeals his convictions for aggravated felonious sexual assault and felonious sexual assault on two minors under the age of thirteen. *See* RSA 632-A:2, I(l) (2007); RSA 632-A:3, III (2007). On appeal, he argues that the Superior Court (*Groff*, J.) erred in: (1) denying his motion to suppress; (2) denying his motion for a mistrial when a redacted portion of his interrogation was played to the jury; (3) permitting the State to ask him whether one of the complainants was lying; and (4) denying his motion to find a child witness incompetent to testify. We reverse and remand.

Viewing the evidence in the light most favorable to the State, the jury could have found or the record supports the following. From 2004 to 2006, the defendant lived in Nashua with his former wife and two children, C.P. and A.P. In 2006, the couple separated, and the children moved with their mother to upstate New York to live with their grandmother. The children's mother began to date another man whom the children started to call "Dad." One evening at the dinner table, C.P. and A.P. told their grandmother that they had been sexually assaulted by the defendant. The children's mother promptly reported this disclosure to New York authorities, sought a protective order against the defendant, and petitioned for full custody of the children in New York. The New York State police referred the case to the Nashua police.

In June 2007, a Nashua police detective called the defendant and asked him to come to the police station for an interview. The detective told the defendant that there was no active warrant for his arrest. The defendant, who had moved to Georgia to live with his mother, declined the request, stating that he did not have the money to travel to Nashua. In July, the detective renewed his interview request upon learning that the defendant would be in New York to attend a protective order hearing concerning the alleged assault of C.P. and A.P. Eventually, the defendant agreed to come to Nashua.

On July 11, after the hearing in New York, the defendant and his mother arrived at the Nashua police station. The police directed the defendant to a waiting room, permitted him to watch television, and served him a soda. The investigating officer, with whom the defendant had spoken on the phone, introduced himself to the defendant and led him to an interview room. Although the Nashua police already had obtained a warrant for the defendant's arrest, he was not so informed before the interview.

The defendant was told that the interview would be audio- and video-recorded, and was then advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). He stated that he understood his rights but wanted to waive them and to speak with the detective. He also signed a waiver form. The detective proceeded to question the defendant about his personal history, children, and relationship with his wife. After approximately two hours, the detective directed the interview to the alleged sexual assault of C.P. and A.P. He explained that forensic examiners had interviewed the two children about the assaults and determined that "[C.P.] and [A.P.] are telling the truth." He next told the defendant that his children missed him and that he needed to repair his relationship with the children. The following exchange then occurred:

> [DETECTIVE:] If I saw two children that were distraught by this, destroyed by this, hurt very badly by this, OK, I wouldn't be here talking to you. OK? I wouldn't be here trying to work things with you. OK? Because that's a different source, different scenario, different story. That's not what we're dealing with here. OK? This is a very simple matter. OK? A very simple thing. OK? What you tell me and what we deal with in here can stay between me and you. OK? I know [your] mom's here, OK? Um, and I know your mom is very protective of you, right?
>
> [DEFENDANT:] Right.
>
> [DETECTIVE:] Ok. Um, what you tell me in here, OK, doesn't have to go to her. But I need you to be honest with me so that we

can move past and move forward and keep going. OK? . . . Um, and I'm not bull . . . ting ya. I haven't bull . . . t you all, any of the time. I'm telling you the straight up truth.

After this exchange, the detective asked the defendant to discuss the specific events giving rise to the allegations of sexual assault. When the defendant was not immediately forthcoming, the detective interrupted to remind the defendant that the children had told the truth. The detective then said that he needed to hear the defendant admit that the children were telling the truth "before I can say hey, you know what? This is a decent guy. He crossed the line once. It's all done. It's behind him. You know? Get a little counseling and, and it's over." Shortly thereafter, the detective again stated, "And if you can't tell me the scenario, that, you know, what happened and what was going through your mind at the time, OK, we can't get [you] any counseling to fix the problem if you can't give us some clue as to what the problem was." The defendant then admitted to sexually assaulting C.P. and A.P. and the detective arrested him.

Before trial, the defendant filed several motions relevant to this appeal. He first moved to suppress his oral statements, arguing they were involuntary under the Due Process Clauses of the Federal and New Hampshire Constitutions. The State objected, arguing that there was "no evidence that the defendant's will was overwrought [sic] by any comment that was made" by the detective. The trial court denied the motion.

After a hearing, the defendant argued that A.P., who was then five years old, was not competent to testify because A.P. did not appreciate the consequences of lying. The trial court disagreed, ruling that A.P had demonstrated "sufficient capacity to observe, remember, and narrate, as well as to understand the duty to tell the truth." She was found competent to testify.

The defendant moved to sever the trials on the indictments concerning the two children. The trial court granted this motion, resulting in separate trials. Because of the severance, the parties agreed to redact the transcript of the defendant's confession to omit any reference to the acts of sexual assault against A.P. at the trial for the sexual assault of C.P. These passages were blacked out with a marker. The parties also agreed to redact the video-recording of the confession by muting the sound.

The trial involving C.P. occurred first. During the detective's testimony, the prosecution played the redacted video-recording and gave the jury the redacted transcript. At one point during the videotape, the defendant objected and moved for a mistrial, arguing that the prosecution had not properly redacted the videotape and that the jury heard "with [A.P.] at least twice." Based upon this statement, the defendant contended that the

jury would infer that the defendant assaulted A.P., not just C.P. as alleged, and that the defendant discussed this assault in the redacted portions of the interrogation. The State maintained that the jury had heard nothing prejudicial and that the jury would infer only that A.P. may have witnessed the assault. The trial court denied the defendant's request for a mistrial.

During his case, the defendant introduced evidence that his ex-wife's new boyfriend had assaulted C.P. The defense pointed to the fact that C.P. called the new boyfriend "Dad." The defense also elicited from C.P. that the boyfriend had shown C.P. his penis and "does nice things when he shows [C.P.] his penis." Further, the defendant testified that he had never assaulted C.P.; he recanted his confession. He testified that the detective's assertion that a forensic examiner had found his children to be truthful led him to believe that everyone would think he was guilty. For this reason, the detective's promise that he would only have to attend counseling if he confessed sounded attractive, and, therefore, he confessed. Upon cross-examination, the State asked the defendant whether C.P. was lying. Defense counsel objected, arguing that the question impermissibly forced the defendant to judge the credibility of another witness. The trial court overruled the objection and allowed the defendant to respond. After two days of trial, the jury convicted the defendant of two counts of aggravated felonious sexual assault with a minor under the age of thirteen. *See* RSA 632-A:2, I(l).

Approximately one month later, the trial for the alleged sexual assault of A.P. was held. The defendant testified he had never assaulted A.P. and again recanted his confession. The jury, however, found the defendant guilty of two counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(l), and two counts of felonious sexual assault with a minor under the age of thirteen, *see* RSA 632-A:3 III.

The defendant appealed his convictions involving C.P. and A.P. separately. Because both cases are interrelated and challenge the trial court's denial of the defendant's motion to suppress, we consider them together.

The defendant argues that his statements to the police were involuntary, and, therefore, their admission at both trials violated his due process rights under the New Hampshire and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend XIV. We first address the defendant's arguments under the State Constitution and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

Part I, Article 15 of the New Hampshire Constitution provides that "[n]o subject shall be . . . compelled to accuse or furnish evidence against himself" and guarantees every citizen due process of law. N.H. CONST. pt. I, art. 15. For a statement to be admissible at trial, the State must prove

beyond a reasonable doubt that the statement was voluntary. *State v. Rezk*, 150 N.H. 483, 486 (2004). Whether a statement is voluntary is a question of fact for the trial court to determine. *State v. Hammond*, 144 N.H. 401, 404 (1999). We will not reverse the trial court's determination unless the manifest weight of the evidence viewed in the light most favorable to the State is to the contrary. *Rezk*, 150 N.H. at 486.

The focus of our voluntariness inquiry is "whether the actions of an individual are the product of an essentially free and unconstrained choice." *Hammond*, 144 N.H. at 405 (quotation omitted); *State v. Damiano*, 124 N.H. 742, 747 (1984). The decision to confess "must be freely self-determined." *In re Wesley B.*, 145 N.H. 428, 430 (2000) (quotation omitted). A confession cannot be "the product of a will overborne by police tactics, or of a mind incapable of a conscious choice." *Hammond*, 144 N.H. at 405 (quotation omitted). Generally, we make a determination of voluntariness in light of "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Id.*

Here, the defendant argues that his confession was involuntary because the interviewing detective made impermissible promises of confidentiality and leniency, respectively. The detective told the defendant that "[w]hat you tell me and what we deal with in here can stay between me and you." Later, the detective stated, "[g]et a little counseling and . . . it's over," implying, according to the defendant, that if he confessed "he would only have to do counseling and that he would see his children"; "he would not have to go to jail." The defendant contends that these promises "were so irresistible they rendered [his] confession involuntary." The State counters that the detective's statements were not promises of confidentiality or leniency. Moreover, relying principally upon *Rezk*, the State argues that "[i]n light of the totality of the circumstances," including the detective's statements, "the trial court correctly found . . . that the defendant's statements were voluntary."

In *Rezk*, we employed a totality of the circumstances test to determine whether a defendant's confession was voluntary where a state agent had made an impermissible promise that was neither a promise of confidentiality nor a promise of immunity from prosecution. *Rezk*, 150 N.H. at 488. We stated:

> Under the "totality of the circumstances" test, the existence of a promise made to the defendant is not dispositive. Rather, all the facts must be examined and their nuances assessed to determine whether, in making the promise, the police exerted such an influence on the defendant that his will was overborne.

*Id.* (quotations omitted). To aid in this determination, we identified five factors that courts have considered, including: "(1) the nature of the promise; (2) the context in which it was made; (3) the characteristics of the individual defendant; (4) whether the defendant was informed of his *Miranda* rights; and (5) whether counsel was present." *Id.* Nevertheless, we stated that "courts must give qualitative, rather than quantitative weight to the promise" when analyzing the impact a promise has on overbearing a defendant's will. *Id.* (quotation omitted). "Even a single factor may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act." *Id.* (quotation omitted).

The totality of the circumstances test, however, does not apply to promises of confidentiality or promises of immunity from prosecution. *State v. McDermott*, 131 N.H. 495, 501 (1989) ("A confession made in reliance upon a promise of confidentiality or a promise of immunity is involuntary and coerced under the State Constitution."); *see Rezk*, 150 N.H. at 487-88 (recognizing *McDermott's per se* rule as to promises of confidentiality or promises of immunity even though *McDermott* cited the totality of the circumstances test).

In *McDermott*, we held a defendant's confession involuntary where a federal drug enforcement agent made an impermissible promise of confidentiality. *McDermott*, 131 N.H. at 501. The agent told the defendant that information he provided about a murder "would not leave the office," that the DEA "simply needed the information . . . to avoid surprises" at trial, and that the DEA would never obtain cooperation from informants if it prosecuted them with the information they provided. *Id.* at 499 (quotations omitted). He further told the defendant that his statements would not be used against him because he had never received his *Miranda* warnings. *Id.* We agreed with the trial court that these statements constituted impermissible promises of confidentiality and held the resulting confession involuntary. *Id.* at 501. We reasoned that "to allow the government to revoke its promise after obtaining incriminating information obtained in reliance on that promise would be to sanction governmental deception in a manner violating due process." *Id.*

Our holding in *Rezk* did not supplant *McDermott's per se* rule in favor of a totality of the circumstances test for promises of confidentiality and promises of immunity from prosecution. *See Rezk*, 150 N.H. at 487-88. In *Rezk*, we acknowledged that *McDermott* found such promises "categorically different" and "limited our *per se* rule of involuntariness to promises of confidentiality and promises of immunity from prosecution." *Id.* at 487 (quotation omitted). For all other promises or threats, we examine the totality of the circumstances to determine "whether, in making the

promise, the police exerted such an influence on the defendant that his will was overborne." *Id.* at 488. For example, in *Rezk*, we analyzed the effect of a police officer's promise of leniency on the voluntariness of the defendant's confession under a totality of the circumstances test. *Id.* at 488-91. There, the defendant asked the interviewing officer "what was in it for him" if he cooperated. *Id.* at 485 (quotation omitted). The officer promised to not charge the defendant with the armed robberies that he allegedly committed two months previously and not to charge his associate. *Id.* Rather, the officer promised to charge the defendant only with the crimes he perpetrated the night of his arrest. *Id.* We held the resulting confessions involuntary because they "were induced by specific promises of leniency," *id.* at 491, that had "the likelihood of stripping the defendant of his capacity for self-determination." *Id.* at 489 (quotation and brackets omitted). The police officer "did more than merely exhort the defendant to be truthful" or promise to recommend leniency to the prosecutor if the defendant confessed. *Id.* at 490.

With these standards in mind, we analyze first whether the interviewing officer made an impermissible promise of confidentiality when he stated "[w]hat you tell me and what we deal with in here can stay between me and you" and "what you tell me in here, OK, doesn't have to go to [your mother]." The State urges us to uphold the trial court's finding that while these statements "suggest an atmosphere of confidentiality," they "could not reasonably be interpreted as a promise of confidentiality" under the totality of the circumstances. In support of this finding, the trial court noted that the defendant: (1) knew of the allegations of sexual assault; (2) indicated that he would turn himself in if an arrest warrant were issued; (3) knew that his former wife was seeking a restraining order and had driven to a hearing in New York concerning that order with his mother; and (4) traveled voluntarily to the Nashua police station. Therefore, the trial court reasoned, "it would have been naive of the defendant to believe that what he told [the detective] would remain solely between him and [the detective]" because the defendant's mother inevitably would learn of the sexual assault.

The trial court's finding that the detective's statements merely "suggested an atmosphere of confidentiality," however, is against the manifest weight of the evidence. By focusing solely upon the context of the defendant's statements, the trial court failed to properly consider the plain meaning of the detective's statement. *See Rezk*, 150 N.H. at 487-91 (analyzing the plain meaning of the officer's statements in addition to the nature and context of the statement to determine that specific promises of leniency were made); *see also Knight v. State*, 850 A.2d 1179, 1189 (Md. 2004) (requiring that a court first objectively determine whether the

interrogating officer made an explicit or implicit threat, promise, or inducement). The detective's statement "[w]hat you tell me and what we deal with in here can stay between me and you" can reasonably be interpreted only one way — that what the defendant told the detective would be kept confidential. It is a promise of confidentiality. The detective's subsequent statement that "what you tell me in here, OK, doesn't have to go to [your mother]" is a further confirmation of this promise of confidentiality. The fact that the defendant knew of the allegations of sexual assault against him, that he voluntarily traveled to the Nashua police station, and that his mother likely knew of the assault allegations does not change the plain meaning of the detective's statement.

Moreover, the detective's promise of confidentiality here is almost identical to the promise of confidentiality made in *McDermott*. *See McDermott*, 131 N.H. at 497-99. In *McDermott*, the agent promised "that the information [the defendant] provided would not leave the office," *id.* at 499 (quotation omitted), just as here the detective promised, "[w]hat you tell me . . . can stay between me and you." The State attempts to distinguish *McDermott*, arguing that the detective here never implied or told "the defendant that his statements would not be used against him criminally," as did the agent in *McDermott*. *See id.* at 499. To the contrary, however, that is the exact implication of the detective's statement that "[w]hat you tell me and what we deal with in here can stay between me and you." Indeed, the detective followed up this promise with the statement, "This is a decent guy. He crossed the line once. It's all done. It's behind him. You know? Get a little counseling and, and it's over," further indicating that the defendant would not be prosecuted criminally and only required counseling. The detective's warning two hours earlier that "[a]nything you say can and will be used against you in a court of law," fulfilling the *Miranda* requirements, did not vitiate the detective's later promise of confidentiality. The trial court erred in finding that the detective's statement was not a promise of confidentiality. *See McDermott*, 131 N.H. at 501.

The State contends that even if the detective made a promise of confidentiality, the defendant did not rely upon it; therefore, his confession was voluntary. For a confession to be involuntary, we have stated that an interrogator's promise must induce or cause the defendant to confess. *State v. Carroll*, 138 N.H. 687, 693 (1994); *see McDermott*, 131 N.H. at 501 (noting that a confession made in reliance upon a promise of confidentiality is involuntary). Here, the trial court found that "there is no indication that the defendant's decision to confess was based upon [the detective's] statements" because, in part, the defendant did not confess "immediately after" the detective's statements.

The trial court's finding that the defendant did not rely upon the detective's promise of confidentiality is against the manifest weight of the evidence. Within ten minutes of the detective's promise of confidentiality, the defendant admitted to the sexual assault of C.P. and then A.P. He had not made a single inculpatory statement during the previous two hours of the interview. Further, the majority of the intervening time is occupied by the detective talking and making statements such as, "I don't want to hear bull . . . t. You know what, I, I don't. I, cause to be honest, if you bull . . . t me, then I may change my impression of you and I may change my view of what happened, OK?"

This case is distinguishable from *Carroll*. In *Carroll*, the defendant was interviewed by a police officer and under pointed questioning admitted to stabbing the pregnant wife of one of his co-conspirators for payment. *Carroll*, 138 N.H. at 689, 693. After these admissions, the defendant stated, "I don't want to go to prison," to which the officer replied, "Then tell us the truth." *Id.* at 692 (quotation omitted). The defendant then made further admissions. *Id.* We held that the officer's statement did not induce the defendant's confession; he had already confessed to several criminal acts and the same factors that motivated his earlier admissions, particularly his mother's exhortations, induced his later admissions. *Id.* at 693. In contrast, here the defendant did not confess until after the detective's promise of confidentiality. Moreover, the defendant's confession here was not motivated by other factors, such as a private actor exhorting him to tell the truth or overwhelming physical evidence of his guilt. *See, e.g., id.*; *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987) (defendant confessed because overwhelmed by evidence police had amassed). The trial court erred in finding that the officer's statements did not induce the defendant to confess.

■ Because the interviewing detective made a promise of confidentiality that the defendant relied upon, we hold that the defendant's resulting statement was involuntary. *See McDermott*, 131 N.H. at 501. The trial court's contrary determination is against the manifest weight of the evidence as viewed in the light most favorable to the State. In light of our ruling that the defendant's confessions were involuntary under the State Constitution, we need not address his arguments under the Federal Constitution. *See Ball*, 124 N.H. at 231-33.

The defendant next argues that, during the trial for the alleged assaults of C.P., the trial court erred in permitting the State to ask the defendant, during cross-examination, if the complainant was "lying." *See State v.*

*Lopez*, 156 N.H. 416, 423-24 (2007). At trial, the defendant took the stand and testified that he did not commit the alleged assaults. The following exchange occurred:

Q.   You heard [C.P.] testify today, right?

A.   Yes, I did.

Q.   Did you commit these crimes?

A.   No, I did not.

Later, on cross-examination, the State asked, "And so today when your son, [C.P.], testified that [the defendant] made me put his penis in my mouth, he was lying? Yes or no?" Before the defendant could answer, his counsel objected, arguing that the question inadmissibly forced the defendant to opine on the credibility of another witness. The trial court overruled the objection, and required the defendant to answer. The prosecutor then renewed his question and the defendant responded, "Yes."

We agree that these questions violated *Lopez*'s "broad prohibition on questions requiring a witness to comment upon the credibility of other witnesses." *Lopez*, 156 N.H. at 424 (rejecting a case-by-case approach in favor of a broad prohibition). In *Lopez*, we found that the trial court erred when it allowed the prosecutor to ask the defendant "whether other witnesses had lied to the jury," *id.* at 423, just as the court erred here in allowing the prosecutor to ask the defendant whether his son had lied. We reasoned that "such questioning interferes with the jury's obligation to determine the credibility of witnesses, and is not probative in that it requires a witness to testify to things outside of her or his knowledge." *Id.* We, therefore, held that "permitting the prosecutor to ask the defendant to opine upon the credibility of other witnesses [is] error." *Id.* at 424.

The State invites us to limit *Lopez* by creating an exception when a defendant has opened the door by testifying about the veracity of another witness on direct examination. *See, e.g., Daniel v. State*, 78 P.3d 890, 904 (Nev. 2003), *cert. denied*, 541 U.S. 1045 (2004). The State contends that "a defendant is not prejudiced by a question" about another witness's credibility "[w]here, as here, the entire defense, including the direct examination of the defendant, is built upon the affirmative accusation that a victim-witness is lying." A minority of six states have adopted this exception. *See, e.g., State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999) (approving questions as to whether a witness was lying where "the focus of the defense was that the state's witnesses were lying and that the evidence against him was fabricated as part of a vast conspiracy to convict him of a crime he did not commit"). We, however, decline the State's invitation to join them. As we stated in *Lopez*, "we are persuaded by the majority of

jurisdictions that have considered the issue that rather than a case-by-case approach, a broad prohibition on questions requiring a witness to comment upon the credibility of other witnesses is the better law." *Lopez*, 156 N.H. at 423-24.

Accordingly, we conclude that the trial court erred in allowing the prosecutor to ask the defendant to comment upon the credibility of another witness. The State asserts this error was harmless. Because we reverse and remand based upon the improperly admitted confession, we need not engage in further analysis.

Finally, the defendant argues that the trial court at his first trial erred in denying a mistrial after the jury heard testimony that should have been redacted and erred at the second trial in finding A.P. competent to testify. In light of our reversal on other grounds, we need not address these issues.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.