NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Coos
No. 2019-0680

THE STATE OF NEW HAMPSHIRE

v.

SETH HINKLEY

Argued: March 18, 2021
Opinion Issued: September 10, 2021

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HANTZ MARCONI, J. The State appeals an order of the Superior Court (Bornstein, J.) granting defendant Seth Hinkley's motion to suppress his confession and subsequent statements made during an interview with the police. See RSA 606:10, II(a) (2001). On appeal, the State argues that the trial court erred in finding that the defendant's confession was involuntary because the police officer's statements constituted a promise of immunity and the defendant's confession was induced by the officer's statements. Because we find no error, we affirm and remand.

The following relevant facts are taken from the trial court's order or from the suppression record.  See State v. Pseudae, 154 N.H. 196, 200 (2006).  In December 2017, a report was made to the Berlin Police Department that the defendant, who was then eighteen years old, sexually assaulted the complainant, who was then seventeen years old.  After witnessing the complainant's interview with the Child Advocacy Center, Officer Marsh asked the defendant to come to the police station to talk.  The defendant reported to the police department that same day.  He was not accompanied by counsel or by anyone else.  The defendant was interviewed in a conference room by Marsh and another Berlin police officer, though Marsh primarily conducted the interview, which lasted a total of forty-one minutes.

At the beginning of the interview, the defendant agreed to have the interview recorded.[1]  Marsh told the defendant that the conference room door was unlocked, but closed for privacy, and that the defendant was free to leave at any time, for any reason.  Marsh then reviewed the defendant's Miranda rights with him, and the defendant acknowledged that he understood his rights and signed a waiver of rights form.  See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).  In response to Marsh's questions, the defendant explained that the complainant used to be his girlfriend and that someone made a false accusation that he touched her sexually.

Marsh asked if the defendant and the complainant had been "intimate" with one another when they were alone together, and the defendant initially responded that they had not.  Marsh asked whether the defendant had kissed or hugged the complainant, to which the defendant replied, "Yes," and then explained, "Sorry.  I thought you meant sexually."  Marsh asked, "Okay.  Well, I mean did you ever have intercourse with her?," and the defendant answered, "No . . . She was too young, and I didn't want to. . . . She was 17, and I was 18."

Marsh asked, "Is there anything illegal about that?"  The defendant replied, "I didn't know, but I just wanted to be on the safe side."  Marsh then made the following assertions to the defendant:

> Okay. I'll — I'll be honest with you, okay.  I told you I want to be
> up-front with you, and I want you to do the same with me. . . . Um
> — we're being told something completely different.  Okay?  And
> there's no reason why — um —unless they were trying to cover
> something up.

---

[1] Both the audio recording of the interview and the corresponding transcript were available to the trial court in ruling on the defendant's motion to suppress.  Although the transcript is part of the record on appeal, the audio recording is not.

And at this point <u>I told you you're not in trouble if you had sex with her, okay.</u>  It's your girlfriend.  She's over the age of 16.  That's the age of consent.

Um — and so, I mean, she's telling us that yeah, we had sex on a few occasions, so I'm just trying to kind of delve into that and then some other stuff that we were told — um — because <u>you're not gonna be in trouble from me if you told me that you had sex with her.</u>

Because she's being very specific about dates, times, occasions when you two did have sex, so I want to — I want to stop before we go too far because I want you to get ahead of this before this rests on your shoulders and — and eventually hurts you — um — because we're the police here.

This isn't — I'm not your dad, okay?  Um — I'm not [the complainant's] dad, okay.  I'm a police officer.  So before you go lying and/or half-truths or whatever, okay, I need you to be up — up-front and straight up — straight up with me, okay?

(Emphases added.)  Marsh then stated, "there were occasions when you had intercourse with her."  The defendant answered, "Yeah."  Marsh continued with the interview, and the defendant made several other incriminating statements, both orally and in writing.

The defendant was thereafter charged with five counts of aggravated felonious sexual assault.  See RSA 632-A:2, I(a), (m) (2016).  The defendant moved to suppress his statements made during the interview, arguing that he made them involuntarily.  The State objected.  Following a two-day evidentiary hearing, the trial court found that the defendant's confession to having sex with the complainant was <u>per se</u> involuntary because two of Marsh's statements, emphasized above, constituted a promise of immunity from prosecution, and the defendant relied upon that promise when he confessed to having sex with the complainant.

In making its finding, the court agreed with the State that Marsh had made accurate "statements of fact" regarding the age of consent in New Hampshire — that persons sixteen years of age and older can consent to sexual intercourse — and that these assertions "were in direct response to the defendant's apparent misunderstanding about the age of consent."  However, the trial court explained, the State "overlook[ed] the fact that Officer Marsh went far beyond making accurate statements of fact when he twice assured the defendant that the defendant would 'not . . . be in trouble from me if you told me that you had sex with her.'"  The court reasoned:

While it may be true that the defendant could not be prosecuted for engaging in consensual intercourse with the complainant, sexual penetration is one of the elements of each of the charged

3

offenses in this case. At trial, the State will be required to prove, beyond a reasonable doubt, that the defendant engaged in sexual penetration with the complainant. Therefore, Officer Marsh's assertions that the defendant would not be in trouble if he confessed to having sex with the complainant were not simply statements of fact. Instead, Officer Marsh's assertions constituted promises of immunity from at least one element of the charged offenses. Because the State is required to prove all the elements of the charged offenses beyond a reasonable doubt, Officer Marsh's promise of immunity from at least one of the elements was tantamount to a promise of immunity from the offenses themselves.

Additionally, the Court finds it significant that Officer Marsh did not tell the defendant that he would not be in trouble if he admitted to having "consensual" sex with the complainant, as the State contends. Rather, Officer Marsh unequivocally asserted, without qualification or limitation, that the defendant would not be in trouble if he confessed to having sex with the complainant. Immediately thereafter, and plainly relying upon Officer Marsh's assertions, the defendant confessed to having intercourse with the complainant.

(Citations omitted.)

The trial court ordered that the defendant's confession that he had sex with the complainant be suppressed for violating his rights under the State Constitution. See N.H. CONST. pt. I, art. 15. It also found "that the statements the defendant made after he first confessed to having intercourse with the complainant were derivatively obtained through a prior violation of the defendant's constitutional rights." Thus, the court also suppressed the defendant's subsequent oral and written statements made during the interview as fruit of the poisonous tree. The trial court denied the State's motion for reconsideration, and this appeal followed.

II

Because the State Constitution provides greater protection to a criminal defendant with respect to the voluntariness of confessions than the Federal Constitution, State v. Carroll, 138 N.H. 687, 690-91 (1994), we decide this case under the State Constitution with reference to federal cases only to aid our analysis, see State v. Ball, 124 N.H. 226, 232 (1983). Part I, Article 15 of the New Hampshire Constitution provides that "[n]o subject shall be . . . compelled to accuse or furnish evidence against himself" and guarantees every citizen due process of law. N.H. CONST. pt. I, art. 15. Under the New Hampshire Constitution, the State must prove that a defendant's confession is voluntary

beyond a reasonable doubt.[2]  State v. Parker, 160 N.H. 203, 207-08 (2010); see N.H. CONST. pt. I, art. 15.  "A determination of the voluntariness of a confession is a question of fact for the trial court to decide."  State v. Carrier, 173 N.H. 189, 205 n.4 (2020) (quotation and ellipsis omitted).  Thus, "[w]e will not overturn a trial court's determination that a confession was not voluntary unless it is contrary to the manifest weight of the evidence, as viewed in the light most favorable to the defendant."  Id. at 205.

To be voluntary, a confession must be the product of an essentially free and unconstrained choice and not be extracted by threats, violence, direct or implied promises of any sort, or by the exertion of any improper influence or coercion.  Id.  Generally, in making a determination of voluntariness, the trial court examines "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation."  Parker, 160 N.H. at 208 (quotation omitted).  "The totality of the circumstances test, however, does not apply to promises of confidentiality or promises of immunity from prosecution."[3]  Id. at 209; cf. State v. Rezk, 150 N.H. 483, 486-88 (2004) (employing totality of the circumstances test to determine whether a defendant's confession was voluntary where state agent made a promise that was neither a promise of confidentiality nor immunity).  Because such promises are "categorically different" from all other types of promises, they are "dispositive of the issue of voluntariness."  State v. McDermott, 131 N.H. 495, 501 (1989).  A confession is per se involuntary if there was a promise of confidentiality or a promise of immunity and the accused relied upon that promise in making his or her confession.  See Parker, 160 N.H. at 209, 211; McDermott, 131 N.H. at 501 ("A confession made in reliance upon a promise of confidentiality or a promise of immunity is involuntary and coerced under the State Constitution.").

Here, the State first argues that the trial court erred in finding that Marsh made a promise of immunity when he made the following two statements: (1) "you're not gonna be in trouble from me if you told me that you had sex with her"; and (2) "I told you you're not in trouble if you had sex with her."  The State contends that in making these two statements, Marsh was merely stating the fact "that having sex with a person who had reached the age of consent was not a crime," an interpretation that, according to the State, "is clear" in light of the context of the discussion, particularly given Marsh's statement that the complainant is "over the age of 16.  That's the age of

---

[2] In contrast, the Federal Constitution requires the government to prove a defendant's confession is voluntary by a preponderance of the evidence.  See Lego v. Twomey, 404 U.S. 477, 487-89 (1972).

[3] Under the Federal Constitution, the totality of the circumstances test for voluntariness applies to all promises, including promises of immunity.  See United States v. Flemmi, 225 F.3d 78, 91-92 (1st Cir. 2000); see also Arizona v. Fulminante, 499 U.S. 279, 285-88 (1991).

consent." From this interpretation of Marsh's two "in trouble" statements, the State argues that such a "statement of fact was not a promise of immunity." We are not persuaded that the trial court's factual finding was made in error.

As the trial court found, both times that Marsh told the defendant that he would not be "in trouble" if he admitted to having sex with the complainant, Marsh did not include any equivocations, qualifications, or limitations on his statements. Indeed, the trial court found it "significant" that Marsh "did not tell the defendant that he would not be in trouble if he admitted to having 'consensual' sex with the complainant." The plain language of Marsh's statements supports the trial court's interpretation that Marsh was not simply articulating the legality of consensual sex in New Hampshire, but was promising that the defendant would not be "in trouble" if he admitted to having sex with the complainant. Cf. Carter v. State, 686 N.E.2d 1254, 1259 (Ind. 1997) (explaining, in affirming trial court's finding of voluntariness, that detective's statement, "The law is set up so you're not considered an adult until you're 18," was a "general statement" and "a comment about the legal system and not a personal promise to [defendant] regarding his status," and that "there [was] no evidence that [detective], either expressly or by implication, directly promised [defendant] that he would be tried as a juvenile").

Contrary to the State's assertions on appeal, the trial court analyzed both the plain meaning of Marsh's statements and the context in which they were made, specifically acknowledging that Marsh had accurately stated the law of consent in New Hampshire and that such statements "were [made] in direct response to the defendant's apparent misunderstanding about the age of consent." Although the State emphasizes that the context in which Marsh made these statements shows that Marsh "simply told [the defendant] the state of the law" of consent in New Hampshire, the trial court expressly rejected the State's interpretation of Marsh's two statements and found that the context in which his statements were made did not alter the unequivocal, unqualified, and unlimited plain language that Marsh used in those statements. Cf. Parker, 160 N.H. at 210 ("By focusing solely upon the context of the defendant's statements, the trial court failed to properly consider the plain meaning of the detective's statement."); Sharp v. Rohling, 793 F.3d 1216, 1230-31 (10th Cir. 2015) (holding that state court finding that no promise had been made was unreasonable because detective's "clear" promise, which was "immediate[] and unequivocal[]," was not "altered" by detective's subsequent comments).

The record does not compel the interpretation of Marsh's statements for which the State advocates on appeal, and we conclude that the trial court's interpretation is not against the manifest weight of the evidence, as viewed in the light most favorable to the defendant. See Carrier, 173 N.H. at 205 & n.4. Compare Carroll, 138 N.H. at 689, 692, 697 (affirming trial court's finding of voluntariness, explaining sergeant's statement at issue did "not compel an interpretation as a promise of immunity" and that "[a]ny interpretation of

[sergeant's] statement as a promise [of immunity], when considered in the context of the whole interrogation, [was] strained"), with Parker, 160 N.H. at 210-12 (reversing trial court's finding of voluntariness, explaining that the detective's statement "can reasonably be interpreted only one way — that what the defendant told the detective would be kept confidential. It is a promise of confidentiality," and that context of the interview did "not change the plain meaning of the detective's statement").

The State also argues that the trial court erred in finding that Marsh made a promise of immunity for a crime when it reasoned that Marsh promised immunity "for an element of the offense or for a legal act." The State asserts that "[m]any crimes . . . contain elements which are not, by themselves, illegal," and that "an adult cannot ordinarily be prosecuted for having consensual sexual relations with another adult. Absent some element that would transform that act into a crime, a promise of immunity for a legal act is simply illusory." The State maintains, "The trial court erred when it treated the officer's assurance that consensual sex with a person 16 years old or older was not unlawful as tantamount to granting immunity for an entirely different scenario, one that involved a crime."

We disagree with the State's reading of the trial court's suppression order here. The interpretation of a trial court order presents a question of law for us to decide. State v. Surrell, 171 N.H. 82, 88 (2018). We first note that the State's argument is premised, at least in part, upon its characterization of Marsh's statements as only referring to "consensual sex," i.e., the "lawful act" that "adult[s] cannot ordinarily be prosecuted for," which, the State contends, the trial court improperly conflated with promising immunity for a crime. As previously discussed, the trial court expressly found that Marsh's two "in trouble" statements were not limited to consensual sex and were not mere "statements of fact" about the law of consent in New Hampshire.

We understand the trial court to have reasoned that Marsh's unequivocal, unqualified, and unlimited statements that the defendant would not be "in trouble" if he admitted to having sex with the complainant conveyed a promise that the defendant would not be prosecuted for committing aggravated felonious sexual assault. As the trial court explained, Marsh's statements were "tantamount to a promise of immunity from the offenses themselves." The trial court observed that only in certain circumstances does the act of sexual penetration constitute a crime, and that sexual penetration is a necessary element of all forms of aggravated felonious sexual assault. See RSA 632-A:2 (2016) (amended 2017, 2018, 2020). Thus, the trial court construed Marsh's unequivocal, unqualified, and unlimited statements as a promise to the defendant that, if he admitted to having sex with the complainant, he would not be in trouble for having sex with her under a wide range of circumstances, including under circumstances that would constitute

7

the crime of aggravated felonious sexual assault.  The State has not demonstrated that such reasoning is erroneous, and its arguments do not otherwise support reversing the trial court's factual finding that a promise of immunity was made.  See Carrier, 173 N.H. at 205 & n.4; Surrell, 171 N.H. at 88.

We now turn to the State's argument that "the defendant's confession was not induced" by Marsh's statements.  The trial court found that when Marsh "unequivocally asserted . . . that the defendant would not be in trouble if he confessed to having sex with the complainant," the defendant, "[i]mmediately thereafter, and plainly relying upon Officer Marsh's assertions, . . . confessed to having intercourse with the complainant."  (Emphasis added.)  This is the finding of reliance that, unless made in error, makes the promise of immunity dispositive of the issue of voluntariness.  See McDermott, 131 N.H. at 501.

The State does not challenge the trial court's factual finding as to why the defendant's confirmation that he had sex with the complainant was made in reliance upon Marsh's promise of immunity, but instead challenges the point in time at which the defendant "confessed," to argue his "confession" was not made in reliance upon Marsh's statements.  For example, the State argues that "[t]he defendant was not induced into confessing to aggravated felonious sexual assault by the assurance that the [complainant] was of legal age" (bolding omitted) because he only "confessed after he was confronted with the [complainant's] allegations and after he realized later in the interview that she was not lying about what had happened."  According to the State, "[i]t was this [later] exchange, and not the discussion about the age of consent, that prompted the confession," i.e., as the State asserts, the defendant's "admission of criminal activity."

To the extent the State argues that the defendant's affirmative response to the statement "there were occasions when you had intercourse with her," was not "incriminating" because he was simply confirming that he had legal, consensual sex with the complainant, we are not persuaded, even assuming the defendant's response could fairly be so construed.  See State v. Wood, 128 N.H. 739, 740-42 (1986) (evaluating, in aggravated felonious sexual assault case, whether defendant's statement "in which he admitted having sexual intercourse with the victim, but alleged that it was consensual" was a voluntary confession under the Federal Constitution).  Further, we reject the State's contention that a defendant's statement can be incriminating, and thus subject to constitutional protection, only if the statement itself establishes the defendant engaged in "criminal activity."  See, e.g., id.; State v. Burris, 170 N.H. 802, 811 (2018) (explaining that under the State Constitution, "by definition, self-incrimination contemplates the use of the defendant's

statements to aid in establishing the guilt of the defendant" (brackets, emphasis, and quotation omitted)). See generally N.H. CONST. pt. 1, art. 15 ("No subject shall be . . . compelled to accuse or furnish evidence against himself."); U.S. CONST. amends. V, XIV.

The trial court found that the defendant confessed to having sex with the complainant "[i]mmediately thereafter, and plainly relying upon" Marsh's two statements at issue. Because we reject the State's attempt to relocate the defendant's "confession" on the timeline of the interview, we conclude that the State has not demonstrated that the trial court erred in finding that the defendant's confession was made in reliance upon Marsh's promise of immunity. See Carrier, 173 N.H. at 205 & n.4; see also McDermott, 131 N.H. at 501.

### III

In sum, we conclude that the trial court did not err in finding that Marsh made a promise of immunity and that the defendant relied upon that promise when he confessed to having sex with the complainant, and, consequently, that the defendant's confession was per se involuntary under the New Hampshire Constitution. The State did not argue in the alternative that, even if we affirm the trial court's finding of involuntariness, the trial court erred in suppressing the defendant's oral and written statements made subsequent to his involuntary confession as fruit of the poisonous tree. The State's remaining arguments as to why the trial court did err do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). Therefore, we affirm the trial court's ruling suppressing the defendant's confession and all statements made thereafter.

Affirmed and remanded.

HICKS, BASSETT, and DONOVAN, JJ., concurred.